**People of the State of Illinois, Plaintiff-Appellee, v. James McBride, Defendant-Appellant.**

**Gen. No. 53,922.**

First District, Fourth Division.

September 23, 1970.

Patrick T. Murphy and Freddy S. Meinfelder, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick T. Driscoll, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

In two separate indictments, defendant was charged with one murder and two armed robberies. After a jury trial, he was convicted of voluntary manslaughter and both robberies. The court imposed concurrent sentences of two to ten years.

In this appeal it is contended that (1), the trial judge erred in not allowing a psychologist (in testimony before the jury), to answer hypothetical questions concerning defendant's sanity; (2), the trial judge erred in refusing to instruct the jury on the subject of sanity; (3), the trial judge erred in giving the jury an instruction defining murder when the evidence could not support a conviction for that offense; (4), the trial judge erroneously instructed the jury on the subject of self-defense; and (5), defendant was prejudiced by final arguments in which the assistant state's attorneys made a personal attack on defendant's court-appointed counsel.

On August 27, 1967, at approximately 6:15 a. m., Preston Fox was the night clerk in the Nicollet Hotel in Chicago. Present at the time was a self-described prostitute, Mrs. Helen Barnes, who lived in the hotel and was the maid. Defendant entered the hotel. Moments later, Fox and defendant exchanged words, followed by an altercation in which each man struck the other with his hand. Fox drew a .38-caliber gun from his pocket.

The two men struggled for the gun. As they did, Mrs. Barnes stepped into a room nearby. In the struggle, the men moved out of Mrs. Barnes' vision. When they returned within Mrs. Barnes' view, she saw the gun in defendant's right hand. The two men again struggled out of Mrs. Barnes' vision. She heard the gun go off. Mrs. Barnes then heard Fox say, "You did it." He fell to the floor and died a short time later from a wound caused by a bullet that entered his left chest.

With Fox's gun in his possession, defendant ran out of the hotel and went six blocks north and west to a filling station at 327 West Chicago Avenue. A taxicab was being checked by the station attendant, Lester Woodruff. Standing nearby was the driver, Randall Ehardt. Using the gun, defendant robbed both men, taking $17.00 from Woodruff and between $6.00 and $7.00 from Ehardt. Defendant then ordered Woodruff to lie on the ground near some gas pumps. He ordered the cab driver to drive him away. Woodruff heard defendant say, "I've killed one man and another doesn't make any difference." After the cab left, Woodruff called the police.

When Ehardt drove from the filling station, defendant, seated in front, held him at gun-point. The cab went a short distance north, then east. He then told Ehardt "[t]hat he wanted to go to the County Hospital Blood Bank." At one intersection, an illegal left turn by Ehardt (ordered by defendant) attracted a police car. Ehardt attempted to comply with the officers' command to stop; but defendant told him "to take off." A short distance away the cab was stopped by a road block. Defendant was forced out, arrested and searched. On his person $23.00 in currency were found. In the cab was found the gun defendant took from Preston Fox. It and a bullet taken from the body of Fox were admitted in evidence. Defendant, through his counsel, stipulated that the bullet was fired by the gun.

In his defense defendant called Doctor Joseph Garvin, a psychologist. His testimony disclosed that more than eleven months after the events in question he examined defendant and subjected him to psychological tests. Doctor Garvin was asked whether he could "tell the ladies and gentlemen of the jury and the court some-

thing about McBride's personality and makeup." There was an objection. In proceedings outside the jury's presence, the assistant state's attorney argued that the question asked Doctor Garvin would have elicited irrelevant evidence. He argued that a question concerning defendant's personality or his personality traits could not raise an issue concerning sanity. After hearing counsel, the trial judge sustained the state's objection. Defendant's attorney requested and was given leave to make an offer of proof by questioning Doctor Garvin outside the presence of the jury.

In answers to questions put to him by defense counsel, the court and the assistant state's attorney, Doctor Garvin said that in his opinion defendant, at the time of the offenses charged in the two indictments, was not suffering from any mental disease or mental defect. A hypothetical question was asked Doctor Garvin. Then, before he could answer, he was asked:

THE COURT: "Are there enough factors there for you to conclude?"

A. "There really aren't. We are asking about an act here which could have numerous interpretations, it might indicate that the man was not sane or thinking rationally, but it might indicate many other things, I do not know his purpose or —"

MR. MURPHY: Q. "By the fact you say there might be this, that and the other thing, would you characterize these thoughts in your own mind as a doubt?"

A. "I think you could say that, yes, there would be something for further exploration, but I could not come to any conclusion, there is no one conclusion that follows from those facts is the point I want to make."

Q. "Doctor, I'm not asking you on the sanity issue at all."

A. "Okay, then I would have a doubt, I would have some doubt."

Counsel for the defendant then told the trial judge he wanted the jury to hear Doctor Garvin's answer. There was an objection by the State. The objection was sustained. It is this ruling that forms the basis for defendant's first contention. Defendant argues that the trial judge erred in precluding Doctor Garvin from answering the hypothetical question in testimony before the jury.

 ■ This contention is without merit. Doctor Garvin's doubt concerning the sanity of a hypothetical person was not material. It would have had no bearing on defendant's sanity at the time of the alleged offenses. It would not have been evidence that as a result of mental disease or mental defect defendant lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law when he committed the offenses charged against him. In contrast with People v. Noble, 42 Ill2d 425, 248 NE2d 96, there was no medical evidence on which the testimony of Doctor Garvin, a psychologist, could rest. Under these circumstances, the trial judge's ruling was correct. Compare People v. Pecora, 107 Ill App2d 283, 246 NE2d 865.

Defendant's second contention is that the trial judge erred in refusing to give the jury two of his instructions concerning sanity. Defense instruction No. 13:

> Every man is presumed sane until this presumption is overcome by evidence sufficient to raise a reasonable doubt of sanity at the time of the crime. The presumption of sanity is overcome by evidence, tending to prove insanity of accused, which is sufficient to raise a reasonable doubt of sanity at time of commission of act for which accused is sought to be held accountable, and when that is done presumption of sanity ceases and prosecution is then required to prove sanity of accused beyond a reasonable doubt, as a necessary element of crime charged (sic)
> . . . .

Instruction No. 14:

> A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental

disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

When these instructions were offered, the State objected on the ground that no evidence raised the issue of defendant's sanity. Defendant's counsel argued that both Lester Woodruff and Randall Ehardt testified that when defendant robbed them, he acted irrationally. Counsel urged that the testimony of the two lay witnesses and that of Doctor Garvin raised the issue of defendant's sanity at the time of the offenses. After hearing argument, the trial judge refused to give the two instructions.

 Under our law, "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." Ill Rev Stats 1967, c 38, § 6–2(a), (b). The law presumes all men are sane. People v. Kenzik, 22 Ill2d 567, 177 NE2d 162. Because of this presumption, to raise an issue concerning sanity, there must be some evidence that tends to prove insanity. People v. Munroe, 15 Ill2d 91, 98, 154 NE2d 225. This being so, there must have been such evidence before defendant was entitled to any instruction on insanity. Evidences of idiosyncratic behavior and irresponsibility of conduct were insufficient to warrant an insanity instruction. United States v. Gorman, 393 F 2d 209 (7th Cir 1968), cert den, 393 US 832, 21 L Ed2d 103, 89 S Ct 102. Neither the testimony of the two lay witnesses nor that of Doctor Garvin was enough to raise a reasonable doubt concerning defendant's sanity. People v. Davenport, 111 Ill App2d 197, 249 NE2d 328; see 73 ALR3d 146, Annotated. Therefore, refusal of defendant's instructions on sanity was not error.

Defendant's third contention is that the trial judge erred in giving the jury an instruction defining murder when there was no evidence to sustain a verdict for

that offense. Defendant argues that the murder instruction without evidence of malice, express or implied, intimidated a confused jury into compromising defendant's claim of self-defense.

 Translating this language to terminology applicable to the Criminal Code,* this contention disregards the testimony of Helen Barnes who said she saw Preston Fox's gun in defendant's right hand. A few minutes later, according to her, a shot was fired. This testimony, if believed by the jury, tended to prove that defendant disarmed Fox and then shot him. Ordinarily, one is not justified in shooting or employing a deadly weapon against his antagonist after the latter has been disarmed or disabled. 40 CJS, Homicide, § 131. Although defendant contends the killing of Fox was self-defense, it was a question of fact whether defendant, without justification, shot and killed Fox after he was disarmed. Whether the killing of one person by another occurs under circumstances which justify the act under the doctrine of self-defense, or was the result of some other motive, is a question of fact to be determined by the jury, under proper instructions, from consideration of all the evidence. People v. Smith, 404 Ill 125, 88 NE2d 444; People v. Adams, 113 Ill App2d 205, 252 NE2d 35. This was a murder prosecution; and there was evidence of that offense. Consequently, it was proper for the trial judge to instruct the jury on that subject so that the jury could decide whether the defendant was guilty of murder or of the lesser included offense of voluntary manslaughter. See People v. Dorsey, 98 Ill App2d 259, 240 NE2d 391.

Defendant's fourth contention is that the trial judge erroneously gave the jury two State instructions.

Instruction No. 18:

> The court instructs the jury that a person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the kill-

---

* 9–1(a)(1) and (2), 9–2(b)7–1.

ing under the principles stated in the Court's instruction on self-defense, but his belief is unreasonable.

Instruction No. 22:

The court instructs the jury as a matter of law that the defense of self-defense is not available to a person who otherwise initially provokes the use of force against himself, unless:

1. Such force is so great that he reasonably believes that he is in imminent danger of death or great bodily harm and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or

2. In good faith, he withdraws from physical conduct with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force.

■ ■ It is obvious that No. 18 did not primarily concern self-defense. This was the State's instruction on voluntary manslaughter. It is a rule in homicide cases that if there is evidence, believed by the jury, which would reduce the offenses to manslaughter, an instruction defining the crime must be given. People v. Harris, 8 Ill2d 431, 134 NE2d 315; People v. Gajda, 87 Ill App 2d 316, 232 NE2d 49. In its notes to Illinois Pattern Instructions in Criminal Cases, IPI—Criminal, 7.05, the Committee said, "When the charge is murder, the defense is self-defense, and the proof supports a voluntary manslaughter instruction and verdict, the order of instruction should be: *first* Instruction 7.01 (Murder); *second,* this Instruction 7.05; *third,* applicable instruction from Chapter 24—Defenses." The circumstances of this case made the instruction given proper.

■ No. 22 was on the subject of self-defense. Because there was a question whether defendant or Preston Fox was the initial aggressor in the altercation that resulted in the homicide, this instruction gave the applicable law to the jury. In substance, the instruction was

IPI—Criminal, 24.09. On the evidence which the jury heard, giving of this instruction was not error. People v. Jordan, 18 Ill2d 489, 165 NE2d 296.

■■ Defendant's fifth contention complains of the final arguments of the assistant state's attorneys. He argues that they made a personal attack on his court-appointed counsel. We have carefully examined the summations to the jury. We find that the remarks complained about were concerned with the testimony of defendant's court-appointed counsel which was offered to impeach Mrs. Helen Barnes, the State's principal witness. The remarks which form the substance of this contention were addressed to the credibility of the two witnesses. Fairly construed, they were not reflections on defendant's court-appointed counsel. They were arguments concerning the evidence. Statements of counsel and argument based on proven facts and circumstances, or upon legitimate inference therefrom do not exceed the bounds of proper debate and are not to be discountenanced by the courts. People v. Conrad, 81 Ill App 2d 34, 49, 225 NE2d 713, affd 41 Ill2d 13, 241 NE2d 423.

After reviewing defendant's contentions, we conclude that he received a fair trial. Judgment is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.