Argued December 1, affirmed December 27, 1971, petition for
rehearing denied January 26, petition for review
denied April 18, 1972

STATE OF OREGON, *Respondent, v.*
JOE CLEOPHUS BROWN, JR. (C-58424),
*Appellant.*
491 P2d 1193

*Howard R. Lonergan,* Portland, argued the cause and filed the brief for appellant.

*John W. Osburn,* Solicitor General, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant appeals from conviction of second degree murder. He was jointly indicted with Roger Allen Shirley for the homicide of one Tucker.[1]

---

[1] The opinion on appeal of Roger Allen Shirley from conviction under the joint indictment is reported in State v. Shirley, 7 Or App 166, 488 P2d 1401 (1971). In this case, as distinguished from *Shirley,* the charge was tried to a jury and the court refused to submit first degree or second degree felony murder.

The evidence was that Tucker had taken a Mercury automobile and five baggies of heroin belonging to defendant Brown and had not returned them or money for them to Brown; that Brown was looking for Tucker and according to two witnesses, "he said that if he saw Bruce Tucker he would have to kill him" and "He said once or twice, maybe, if he got his hands on him [Tucker] he'd kill him." They testified that Brown had a gun with him, and, accompanied by Shirley, went looking for Tucker. When Brown found Tucker, a witness who was then present testified that Brown forced Tucker into a chair and with a small automatic pistol which he had cupped in his hand struck Tucker on the head twice. With the second blow the gun fired and Tucker slumped to the floor, his breath diminished, and Brown and Shirley departed.

■ Asserted errors are: (1) that a motion taking from the jury's consideration second degree murder should have been allowed; (2) that a motion for a directed verdict should have been allowed; (3) the statutory definition of the word "malice" used in an instruction was wrong, and (4) that an instruction that less than an unanimous verdict could be returned was incorrect. The latter asserted error is rejected on authority of *State v. Gann*, 254 Or 549, 463 P2d 570 (1970).

■ ■ The defendant moved to take second degree murder from jury consideration because, he asserted, there was no proof of malice or purposefulness in the killing. Defendant relies upon *State v. Davis*, 1 Or App 285, 462 P2d 448 (1969). In that case we stated that in ORS 163.020 (1), which defines second degree murder to include a situation where any person kills another "purposely and maliciously," the use of

the word "purposely" means "intentionally." The point of defendant's argument here seems to be that the evidence only points toward a conclusion that Brown intended to punish the victim, not to kill him. The testimony about Brown asserting he intended to kill Tucker was enough, with the evidence of the physical facts, to take to the jury the question of what Brown's intention was.

■ ■ The facts upon which the second assignment of error is based are that the victim was taken to a hospital and kept alive by an artificial respiration machine which, until it was turned off, kept him breathing and his blood circulating. Defendant contends that turning the machine off was the act which terminated Tucker's life rather than the bullet wound. This contention is completely refuted by the testimony of Richard V. Crisera, M. D., who was in attendance at the time of Tucker's death and performed an autopsy upon him. This testimony was:

"Q. Did you determine what the cause of death was from your examination of the body?
"A. Yes.

"Q. Would you tell the jury what actually caused death?
"A. In my opinion the cause of death was a gunshot wound of the head with resultant damage to the brain which resulted in damage to the vital centers of the brain which control respiration and other body activities.

"Q. What type of damage did the—did the gunshot wound cause?
"A. The gunshot wound penetrated the skin of the scalp, passed through the skull on the left side, passed through both cerebral hemispheres, both sides of the brain, passed through the skull on the other side of the head and came to rest in the tissue beneath the skin on the right side * * *."

Defendant asserts that Tucker's life could have been extended "indefinitely." The above quotation is evidence to the contrary.

■ The court in its instructions said:

"* * * There must be some evidence of malice other than the mere proof of the killing to constitute murder in the second degree * * *.

"The words malice and maliciously are used in the broad legal sense of criminal intention to define that state of mind of a person who does a wrongful act intentionally or wilfully and without legal justification or excuse and does not necessarily mean spite or hatred toward the other, *but it does import a wish to injure, vex, or annoy another established by either proof or presumption of law.*" (Emphasis supplied.)

The emphasized words are taken from ORS 161.010, which says this statement, among many others, relates to criminal procedure and crimes "unless the context requires otherwise." In *State v. Smith,* 1 Or App 153, 162, 458 P2d 687 (1969), Sup Ct *review denied* (1970), we stated that there was substance to defendant's claim of error in that this statutory definition of malice was used in a second degree murder instruction. We pointed out that a person might intentionally annoy another and not bear him malice. The context of a second degree murder case will seldom, if ever, justify the use of the words "vex" and "annoy."

■ In *Smith* we held that the context of the case did not require a definition of "malice" because there the defendant was involved in an armed robbery of deceased when the shooting occurred and that the robbery was malicious per se. In the case at bar, it was undisputed that the defendant intentionally struck Tucker on the head two times with a pistol. The

doctor testified that there were marks on Tucker's head which were not attributable to the shooting and which could only be attributed to being struck on the head with something like the pistol. Thus, from uncontradicted testimony the jury could only infer that defendant intended, at the least, to injure Tucker. There is no basis upon which it could infer an intention only to vex and annoy him without malice.

We conclude that the error in using the surplus words in the statutory definition of malice was harmless.

Affirmed.