THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VICTOR RIVERA, Defendant-Appellant.

(No. 55729;

First District—September 25, 1972.

Ackerman & Durkin, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Terry Gordon, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

Following a trial by jury Victor Rivera was convicted of the offense of murder. (Ill. Rev. Stat. 1969, Ch. 38, par. 9—1.) Judgment was entered on the verdict and he was sentenced to a term of not less than 14 nor more than 20 years in the Illinois State Penitentiary. On appeal he contends:

    (1)  that he was denied the effective assistance of counsel due to the trial court's tardy appointment of an interpreter;

    (2)  that the trial court erred in failing to order a pre-trial psychiatric examination;

    (3)  that the court erred by allowing into evidence testimony attributing an unrelated criminal act to the defendant; and

    (4)  that the court erred in refusing to instruct the jury on his theories of the case.

Defendant was indicted for the offense of which he stands convicted in June, 1968. In December of that year he was found incompetent to stand trial and was placed in the custody of the Department of Mental Health. On motion of the prosecution the cause was stricken with leave to reinstate. Eighteen months thereafter, pursuant to defendant's petition, a competency hearing was held at the close of which defendant was found competent by a jury. The cause was reinstated and proceeded to trial in approximately four months.

The sufficiency of the evidence to establish guilt beyond a reasonable doubt has not been challenged in this appeal. Thus, with regard to the proof of the elements of the offense it is sufficient to here note that the evidence presented by the prosecution tended to establish that Vernon Andrews died of a gunshot wound inflicted by the defendant when Andrews attempted to escort defendant from a tavern of which the deceased was the proprietor.

Following the impaneling of the jury, the court inquired as to the necessity of an interpreter. Although defense counsel indicated that an interpreter was unnecessary, the court nevertheless made an appointment, commenting to counsel that the presence of the interpreter was desired by the court to guard against any possibility of defendant's having difficulty understanding the evidence. Defendant, citing *Negron v. New York*, 1970, 434 F.2d 386, argues that he was denied the effective assistance of counsel between the time that his right to counsel first attached and the time that the interpreter was finally appointed. In *Negron* it was held that the trial and conviction of an accused of Puerto Rican birth who neither understood nor spoke the English language lacked the fundamental fairness required by the due process clause of the Fourteenth Amendment where an interpreter was not provided. Counsel appointed to defend Negron spoke no Spanish and was able to confer with his client with the aid of an interpreter for only 20 minutes prior to the trial. Twelve of the fourteen witnesses called by the prosecution testified in English, but their testimony was not contemporaneously translated for defendant. The court found this situation violative not only of the accused's Sixth Amendment to confront his accusers, but also the right to be present at his own trial.

■■ Assuming, without deciding, that the rationale of the *Negron* decision applies equally well to the concept of effective assistance of counsel at the pre-trial stages of a criminal proceeding, we fail to recognize any harm to Rivera. It is clear from the record before us that defendant, unlike Negron, was bilingual. The degree of his mastery of the English language is clearly indicated in the record by his own counsel's stated belief that the appointment of an interpreter was unnecessary and by defendant's ability to lucidly testify under both direct and cross-examination. As noted for the record by the trial judge, the assistance of the interpreter was required only once during the entirety of defendant's testimony. Thus the present case is not one in which it can be said that the rights of the accused were compromised by reason of the circumstance that he was unable to communicate in other than his native tongue.

At the time that the translator was sworn the court requested that she inquire of defendant in his native tongue concerning his under-

standing of what was being said in English. His response was that he understood, but that he could not control himself. When the interpreter, at the direction of the court, inquired as to what he meant, his response was that "mentally" he did not understand what was taking place. The trial court then questioned defense counsel to ascertain his opinion, in the light of defendant's statements, of the necessity of a competency hearing, defendant interjected that his difficulty was the result of fear. Counsel, apparently at first unconvinced of the necessity thereof, eventually did move for a competency hearing and the motion was denied. It is now argued that this incident, when considered in light of defendant's past history, required a psychiatric examination and that the court's failure to order such examination was reversible error.

Section 104—2 of the Code of Criminal Procedure provides:

"(b) If during the trial the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and shall conduct a hearing to determine the defendant's competency and shall at the election of the defendant impanel a jury to determine that issue."

■■ Generally this section has been interpreted to mean that the duty imposed upon the trial judge arises only when there exists a *bona fide* doubt as to the competency of the defendant. (See *People v. Franklin*, 1971, 48 Ill.2d 254, 269 N.E.2d 479.) We fail to find that the incident described, even when coupled with knowledge of defendant's history was sufficient to raise such a *bona fide* doubt as to the competency of the defendant. Thus we must conclude that the court's refusal to conduct a hearing was not an abuse of discretion requiring reversal.

Defendant next contends that reversible error was committed when the trial court, over his objection, allowed into evidence the testimony of Ernesto Cadiz, attributing to the defendant the commission of a prior unrelated act of a criminal nature. Cadiz was allowed to testify that he first saw the defendant approximately 2½ weeks prior to May 29, 1968, the date that Andrews was killed. On that occasion he allegedly saw defendant shoot another individual during an altercation in deceased's tavern. Cadiz also testified that he informed the police as to defendant's identity.

■■ The argument of the State, that the testimony complained of was properly admitted as it was relevant to the question of motive, is not persuasive. In view of all the evidence we do find, however, that the error resulting from the admission of this testimony was not of sufficient magnitude to require reversal. The evidence presented by the State both as to the *corpus delicti* and the identification of defendant as the offender was positive and substantial. Defendant, moreover, never

seriously contested and does not here contest the sufficiency of the evidence on these matters, relying instead on theories of insanity and intoxication in an effort to establish an affirmative defense. We conclude that the error did not result in substantial prejudice to the accused.

Finally, defendant contends that the court erred in failing to instruct the jury on his theories of defense, insanity and intoxication. The affirmative defense of insanity is defined in section 6—2 of the Criminal Code:

> "(a) A person is not criminally responsible for conduct if at the time of such conduct, as the result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or conform his conduct to the requirements of law.
>
> (b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

■■ The law presumes all men to be sane. Thus, in order to be entitled to an instruction on the defense of insanity the accused must present sufficient evidence on the question to overcome the presumption, thus raising a question of fact for the jury. (See *People v. McBride* (1970), 130 Ill.App.2d 201, 264 N.E.2d 446.) The evidence presented by defendant in an effort to raise the issue consisted of the following. First, the testimony of defendant himself and that of his wife as to the approximate dates of defendant's admission and length of stay in certain hospitals, characterized by them as mental hospitals; and second, the testimony of defendant as to his experiencing feelings of depression, that he did not belong to this world, that people were out to get him, and that there was an unusual and offensive odor about his person. There was also some testimony concerning loss of memory for short periods of time.

■■ No evidence was introduced which tended to establish the medical reason for defendant's admission to these hospitals or the existence of a mental disease or defect which may have deprived him of either the substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. The evidence offered by defendant was not sufficient to overcome the presumption of sanity and therefore the refusal of the trial court to instruct the jury on the affirmative defense of insanity was not error.

■■ The contention regarding the court's refusal to instruct the jury on the defense of intoxication is likewise untenable. No testimony was offered with respect to defendant's condition at or immediately prior to the time of the offense. Even the testimony of defendant himself establishes merely that he had consumed an unspecified volume of alcoholic

beverages over an unspecified period of time on the date in question. Such evidence does not tend to establish a state of intoxication and the refusal of the instruction was therefore proper. The judgment of. the Circuit Court is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.