THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LORENZO LIMAS, Defendant-Appellant.

Second District    No. 76-27

Opinion filed February 4, 1977.

Ralph Ruebner and Joshua Sachs, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Stephen M. Dietz and Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant, Lorenzo Limas, was indicted for the offense of murder. The jury rejected his claims of self-defense and insanity and found him guilty of voluntary manslaughter. The court thereupon sentenced him to a term of not less than 14 nor more than 20 years in the penitentiary. The defendant appeals contending that (1) the trial court committed reversible error when it refused to admit an artificial penis found on the victim's body, and certain evidence relating to the character and reputation of the victim, into evidence, and (2) the trial court erred in excluding testimony of the defendant regarding his fear for his life and reasons for carrying a weapon, and (3) the court improperly limited defense counsel's examination of prosecution and defense psychiatrists, and that (4) the trial court violated the one-third rule of section 5—8—1(c)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(3)) and committed an abuse of discretion when it set defendant's minimum sentence in excess of the statutory minimum of one year.

It is undisputed that the defendant killed Frank Luna by shooting him four times at close range with a .22-caliber revolver. The defendant testified that on the evening of February 21, 1972, he, Luna and a number of others had been drinking, talking and dancing at the apartment of a woman named Lourdes McVey. The defendant had never previously met Luna. According to the defendant, Luna asked him to go downstairs and talk. At about 10 p.m., Luna left the apartment, and the defendant followed. The defendant testified that as he began descending the stairs from the apartment, he looked back and saw Lourdes McVey making a gesture to him from the sofa, which he interpreted to be a warning that Luna was armed with a knife. He stated that when he and Luna reached the bottom landing of the stairs, Luna grabbed the defendant's hand and attempted to pull it toward his own groin; the defendant reacted by pushing Luna away. Luna then attempted to strike him; he fended off the blow with his arm, but received a glancing blow on his cheek which knocked him against the wall. The defendant testified that he then observed Luna "going for something, to pull something," that he "got scared" and "just pulled [his] gun and shot" Luna.

Apart from the defendant, Lourdes McVey was the only eyewitness to testify. She denied making any gesture or signal to the defendant as he left the apartment. She stated that she was at the top of the stairway as Luna and the defendant left, and did not see any pushing or sudden movements prior to the shooting.

At trial, the defense called psychiatrist Dr. Marvin Ziporyn. Dr. Ziporyn expressed the opinion that the defendant was suffering from a mental condition known as paranoia vera. He explained that a person with this mental condition believes that he is either being persecuted or

has delusions of grandeur; however, unlike other mental conditions, in the case of paranoia vera, the individual does not appear to be irrational. Instead, the mental illness is "circumscribed and well encapsulated" so as to only manifest itself in certain areas of an individual's life. When these aspects or areas of the individual's life are not involved, he appears to be quite integrated.

Defense counsel's examination of Dr. Ziporyn was limited by certain trial court rulings. After stating that, during his examination of the defendant, the defendant was cooperative "except when the material touched on certain areas," Dr. Ziporyn was asked "what those areas were." Dr. Ziporyn was also asked to recount any statements which the defendant had made, regarding the shooting, and "any comments" of the defendant which enabled him to render his diagnosis. Finally, he was asked whether he felt that the shooting "is connected with" the defendant's mental disease, and whether the defendant's "inability to conform his conduct to the requirement of the law is connected to his mental disease." In each case, prosecution objections on various grounds were sustained. The defendant argues on appeal that these rulings improperly limited the presentation of his insanity defense.

■■ We begin by noting that Dr. Ziporyn was concededly an "examining" psychiatrist who interviewed the defendant for the purpose of giving testimony at trial. In Illinois, a psychiatrist who examines a patient merely for the purpose of qualifying as a witness ordinarily may not testify as to his professional opinions when they are based upon the patient's description of subjective symptoms; in such a case, it has been held proper to limit the testimony to hypothetical questions (*People v. Hester* (1968), 39 Ill. 2d 489, 510.) It is also held that the trial court "should be given considerable discretion in the rejection or reception of such evidence." (*People v. Hester*, at 510.) Thus, in *Hester*, the trial court was held not to have abused its discretion when it refused to allow the defense psychiatrist to give his opinion of the defendant's susceptibility to a dictated confession, since he was an "examining" physician, and the opinion would have been based on a case history given to him by the defendant. *People v. Hester*, at 509-10.

■■ In the case at bar, the record will not support a finding that the court abused its discretion in limiting the defendant's examination of his psychiatric witness. In fact, it appears that Dr. Ziporyn was granted a fair degree of latitude in his testimony. He testified that the "particular delusional world" of the defendant was his "feeling that he was disliked by a large segment of people"; that the defendant felt that "there were a number of people who wished him ill for no particular reason" and that "these people were so threatening to him to make him feel that his life was in jeopardy"; "[c]onsequently, he was in the habit of going armed and he felt this was * * * simply a mechanism of self defense * * *."

Dr. Ziporyn further testified, over the State's objection, that in his opinion, the defendant's "attitude toward people in general" and his "hostility" was "connected with" his mental illness. Dr. Ziporyn expressed an opinion that the defendant was unable to conform his conduct to the requirements of the law under certain circumstances, and that he had this mental disease at the time of the shooting. Thus, the defendant's examination of Dr. Ziporyn went considerably beyond purely hypothetical questions. We cannot hold that in refusing to allow Dr. Ziporyn to act as a further conduit for narrative declarations by the defendant, or to answer the ultimate question of whether the defendant's acts on the occasion in question were "connected with" his mental illness, the trial court abused its discretion.

■■ A court-appointed psychiatrist, Dr. Werner Tuteur, was called as a rebuttal witness by the prosecution, and expressed the opinion that the defendant was not suffering from paranoia vera. On cross-examination, the defendant's counsel attempted to ask Dr. Tuteur whether he would seek another interview with the defendant if he had the benefit of reports which were at variance with his findings; prosecution objections to the question were sustained. The defendant now contends that these rulings were erroneous. However, this contention was not raised in defendant's post-trial motion. Nor was the point raised by counsel for the defendant in oral argument at the hearing on the post-trial motion. Under these circumstances, the point must be considered to have been waived. *People v. Rogers* (1975), 32 Ill. App. 3d 788, 789-90.

The defendant asserts that certain evidentiary rulings during the defense counsel's direct examination of the defendant substantially prejudiced him in the presentment of his insanity defense. Defense counsel asked the defendant if anyone had ever threatened his life, if he was in fear of his life, and a number of related questions. In each case, the prosecution successfully objected. The defendant argues that the excluded answers would have supported defense psychiatrist Ziporyn's diagnosis of paranoia vera.

■■ It appears from the record that the defendant succeeded in eliciting the same evidence during cross-examination of police sergeant Garza, who testified that he knew that the defendant was in fear of his life, that the defendant's brother had been shot and killed within a year of the trial, and that the defendant felt that the persons who killed his brother might "come after him." The rejection of evidence is not prejudicial where substantially the same evidence is admitted at some subsequent stage of the trial. (*People v. Wallenberg* (1962), 24 Ill. 2d 350, 352-53; *People v. Moretti* (1955), 6 Ill. 2d 494, 529.) Here the evidence which counsel failed to elicit from the defendant actually reached the jury in the form of uncontroverted testimony from Sergeant Garza.

The defendant also argues that the court committed reversible error

when it refused to admit certain testimony regarding the character and reputation of the victim, Luna, into evidence. The defense effort to show Luna's character consisted of questions propounded to a number of witnesses regarding whether the witness "had any knowledge of Luna's sexual activities," whether Luna was "known to [the witness] by reputation," and whether the witness "knew if Mr. Luna was ever convicted of any crime in this country"; prosecution objections to this line of questioning were sustained. The defendant now urges that this evidence was properly admissible to support his contention that Luna was an "aggressive homosexual" who sexually attacked him and forced him to defend himself.

Defendant's counsel failed to make any offer of proof after the trial court sustained objections to his various questions regarding Luna's character. It is not clear what answers the witnesses would have given, or that their testimony would have been relevant or material. It is well established that as a general rule an offer of proof must be made if the exclusion of evidence is to be assigned as error. (*E.g., People v. Novak* (1965), 63 Ill. App. 2d 433, 438.) On this basis alone, defendant's contention regarding the admission of evidence of Luna's character and reputation must be rejected.

■■■ Further, we are not convinced that Luna's alleged reputation as a homosexual was relevant to the issues before the court. Where a claim of self-defense is presented, and evidence has been introduced from which the jury could conclude that the deceased was the assailant, evidence of the violent disposition of the deceased, or threats directed at the defendant by the deceased, is admissible to show the circumstances confronting the defendant, the extent of his apparent danger and the motive which influenced him. (*People v. Stombaugh* (1972), 52 Ill. 2d 130, 138-139; *People v. Davis* (1963), 29 Ill. 2d 127, 129-130.) Here, however, notwithstanding defense counsel's description of Luna as an "aggressive" homosexual, no evidence was tendered to show that Luna had a violent disposition, and no evidence was offered to show that the defendant had any knowledge of Luna's disposition (violent or otherwise). Certainly the fact, if it was a fact, that Luna had a reputation for homosexuality had no *per se* relevance. (See *People v. Parisie* (1972), 5 Ill. App. 3d 1009; *People v. Herron* (1970), 125 Ill. App. 2d 18.) Under these circumstances there was no error in the court's refusal to admit this evidence.

The defendant argues that the trial court committed reversible error when it refused to admit an artificial penis discovered on Luna's body at the hospital after the shooting, into evidence. The defendant maintains that the artificial penis serves to corroborate his story that he was the victim of a homosexual attack, and that Luna "reached for something" in his belt. At trial, the State successfully contended that the admission of the penis would arouse "prejudicial emotion" among the jurors.

On appeal, the State contends that this issue has been waived, since the defendant never made a formal offer of proof regarding the testimony which Scott Leahey, the hospital orderly, would give. Yet the record clearly discloses that the judge and all parties understood that Leahey would testify that he found the artificial penis on Luna's body after the body was removed to the hospital for examination. An offer of proof is unnecessary where the trial judge understands the objection and the character of the evidence, but will not admit it. (*Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 253.) Such was clearly the case here.

■■ It has been held that evidence having a natural tendency to establish the facts in controversy should be admitted, even though it might arouse feelings of horror and indignation in the jury. (*People v. Speck* (1968), 41 Ill. 2d 177; *People v. Jenko* (1952), 410 Ill. 478.) Where exhibits having little probative value are tendered for the purpose of arousing prejudicial emotions, they should be excluded. (*People v. Speck.*) In *People v. Speck* (1968), 41 Ill. 2d 177, 203, the court, quoting from *People v. Jenko* (1952), 410 Ill. 478, said:

> " 'But questions relating to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the trial judge, and the exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant.' "

In the instant case, we are not convinced that the trial court abused its discretion when it refused to admit the artificial penis. There was no showing that an individual with such a device on his person was more likely to be an aggressor. There was no showing that the artificial penis was in such a position on Luna's person as to render it possible that a movement by Luna to grasp the artificial penis could be interpreted by the defendant as an attempt to pull out a knife or weapon, nor was there any evidence that Luna contemplated such a movement. The defendant's testimony was that he saw Luna "go for something" after the alleged struggle between the two had already begun, with the defendant pushing Luna away and Luna attempting to strike him. It would be difficult to imagine how the jury could have drawn any inference that Luna was reaching for an artificial penis under these circumstances, and no such argument was presented at trial. Thus, the trial judge could reasonably have concluded that the penis would not assist the jury in reaching its determination, but would merely provide a distraction prejudicial to the real issues in the case.

■■ Further, we are persuaded that any error in the rejection of testimony regarding Luna's character and reputation, or in the court's refusal to admit the artificial penis, was harmless, in view of the fact that the jury found the defendant guilty of voluntary manslaughter rather than murder. It was undisputed that the defendant fired four shots into Luna at

close range, causing death. In order to have returned a verdict of voluntary manslaughter, the jury must have found either that the defendant was acting under "sudden and intense passion" resulting from "serious provocation," or that he actually, but unreasonably, believed that the use of deadly force was necessary to preserve him from imminent death or great bodily harm. (Ill. Rev. Stat. 1971, ch. 38, par. 9—2.) Thus, to reach such a verdict, the jury must have substantially accepted the defendant's testimony regarding the struggle on the stair landing.

The defendant argues that, had the rejected evidence been admitted, the jury could have found him not guilty by reason of self-defense. The record does not support this contention. Under section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 7—1) a person is justified in the use of force intended to cause death or great bodily harm only where the actor *reasonably* believes that such force is necessary to prevent imminent death or great bodily harm; where the actor's apprehension is reasonable under all of the circumstances, the use of deadly force may be justified even though the danger is only apparent, and not real. *Morello v. People* (1907), 226 Ill. 388, 397; *People v. Johnson* (1954), 2 Ill. 2d 165, 171-172.

Here it was conceded that Luna had never threatened the defendant, and indeed, that the defendant had not previously known Luna. The only evidence which was offered or admitted with any bearing on whether or not the defendant believed his life to be at peril, consisted of his testimony that Lourdes McVey made a gesture which he understood to mean that Luna had a knife, and that Luna reached for something in his belt, just before the shooting.

The description of the gesture given at trial appears to have been somewhat vague, and defendant's demonstration of the gesture in the video tape statement which he gave the police, and which was introduced at trial, without objection, gives no clear indication that the gesture could reasonably have been interpreted to mean that Luna had a knife. Lourdes McVey denied making any gesture at all, and also denied seeing any pushing, shoving or striking between Luna and the defendant prior to the shooting. Perhaps she made a movement to bid the defendant farewell. In any event, the record is devoid of anything, other than the defendant's subjective understanding of the movement, which would provide an objective basis for his belief that it was intended as a warning.

Similarly, the only basis for the defendant's belief that Luna was attempting to "pull a knife" was his own subjective interpretation of a movement by Luna, coupled with his earlier subjective interpretation of Lourdes McVey's purported gesture. Thus, his belief that his life was in danger was solely supported by products of his own imagination. The weight required to justify the erroneous taking of a human life on the basis of self-defense may not be carried by so slender a thread. See *People v.*

*Johnson* (1954), 2 Ill. 2d 165; *People v. Peeler* (1973), 12 Ill. App. 3d 940.

■■ ■ This holding finds further support in the fact that the defendant shot Luna no less than four times. It is clear that the defendant could not have reasonably continued to fear death or great bodily harm after Luna was struck by the first bullet, yet he continued to fire; clearly, "[a] person 'is not justified in shooting or employing a deadly weapon against his antagonist after the latter has been disarmed or disabled' (*People v. McBride* (1970), 130 Ill. App. 2d 201, 208, 264 N.E.2d 446)." (*People v. Pitchford* (1976), 39 Ill. App. 3d 182, 189.) Thus, the defendant failed to offer evidence which would have warranted the jury in finding that his shooting of Luna was justified, and the trial court's rejection of certain of the evidence which was offered did not, therefore, affect the outcome of the case. Where error has not affected the outcome, a judgment will not be set aside by a court of review. *People v. Helm* (1968), 40 Ill. 2d 39, 47; *People v. Marmon* (1944), 389 Ill. 19, 34, *cert. denied*, 326 U.S. 717; *People v. Jersky* (1941), 377 Ill. 261, 269.

■■ Finally, the defendant contends and the State concedes that the sentence imposed by the trial court violated the "one-third rule" of section 5—8—1(c)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(3)) which provides that:

"(3) for a Class 2 felony, the minimum term shall be 1 year unless the court, having regard to the nature and circumstances of the offense and the history and character of defendant, sets a higher minimum term, which shall not be greater than one-third of the maximum term set in that case by the court; * * *."

The trial court sentenced the defendant in accordance with the existing law. However, since that time, the legislature has indicated that cases not yet finally adjudicated are to benefit from the new, lower sentences, section 8—2—4, Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1008—2—4), and the Supreme Court of Illinois has held that section 8—2—4 applies to cases pending on appeal. (*People v. Harvey* (1973), 53 Ill. 2d 585, 589-590.) We therefore hold that the defendant's minimum sentence must be reduced to 6 years and 8 months. However, we reject the defendant's contention that the sentence should be further reduced. The imposition of sentence is a matter of judicial discretion, and it does not appear that a sentence of 6 years and 8 months to 20 years constitutes a manifest abuse of that discretion. *People v. Bonner* (1967) 37 Ill. 2d 553, 563; *People v. Caldwell* (1968), 39 Ill. 2d 346, 355-56.

The judgment of conviction of the circuit court of Kane County is affirmed, and the cause is remanded for resentencing.

Judgment affirmed in part; remanded with directions.

SEIDENFELD and GUILD, JJ., concur.