THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* McKINLEY DRIVER, Defendant.—(EDDIE DRIVER, Defendant-Appellant.)

Fourth District   No. 14288

Opinion filed August 4, 1978.—Modified on denial of rehearing September 28, 1978.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

One of the defendants in this case, Eddie Driver, appeals his convictions for murder, aggravated battery, resisting or obstructing a peace officer, and escape, violations of sections 9—1, 12—4, 31—1, and 31—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1, 12—4, 31—1, 31—6). Defendant was sentenced to concurrent terms of 75 to 150 years' imprisonment for murder, 3 1/3 to 10 years for aggravated battery, 364 days for resisting or obstructing a peace officer, and 364 days for escape. These sentences were ordered to run consecutively to a 2- to 6-year sentence for an unrelated armed robbery offense which had previously been imposed by the court. *People v. Driver* (1978), 60 Ill. App. 3d 381, 376 N.E.2d 803.

On January 22, 1976, Danville Police Officer David Farnsworth stopped defendant's 1964 Ford automobile at 11:40 p.m., outside the Carver Park Housing Project. A "back-up" officer called to the scene later discovered Farnsworth unconscious and lying behind his vehicle with a bloodied head and labored breathing. An officer found Farnsworth's bloodied, 2½-foot, 5-pound flashlight approximately 70 feet from his body. Soon thereafter, Farnsworth was transported to Lakeview Hospital in Danville, and then to Burnham City Hospital in Champaign. While at Lakeview Hospital, another officer discovered the defendant's driver's license in the victim's jacket pocket. Upon arrival at Burnham Hospital, the victim was treated by a neurosurgeon, Dr. Carl Belber, who performed surgery to relieve pressure to the victim's brain. On January 26, 1976, Farnsworth was placed on a respirator. Two brain-wave tests (electroencephalograms or E.E.G.'s) revealed no electroactivity in Farnsworth's brain. After a conference with Farnsworth's family, the respirator was disconnected on January 27, 1976, at which time the victim expired.

Mae Anne Landfair testified that she was present at Peggy Wright's apartment on January 22, 1976, with McKinley Driver, among others. Some time after 11 p.m., the witness looked out one of the windows and observed the defendant with a police officer standing by defendant's 1964 Ford. At that time, the witness and McKinley left the apartment through a

rear entrance. McKinley ran to his brother's side when he heard defendant shouting for the officer to "give him his rights." McKinley then took something from the officer and struck him twice. The witness neither observed defendant hit or kick the officer nor did she see the officer strike either of the Driver brothers, although she later overheard defendant say, at Peggy Wright's apartment, that he had kicked the officer. Some time after the attack, defendant went to his mother's apartment where handcuffs belonging to Farnsworth were removed from his wrists.

Another eyewitness to the attack, Mrs. Dorothy Carter, testified that she looked out her living room window and observed a police car following defendant's car. Neither the officer nor defendant exchanged blows while they stood there alone, however, a crowd gathered and two men ran from an apartment toward the officer. The witness did not observe McKinley Driver in the melee. After the crowd gathered, the witness heard people saying, "Don't beat him, don't beat him."

At 11:30 a.m., on January 23, 1976, defendant was arrested in Danville. When asked to display his driver's license, defendant stated that, "The officer [who] padded [sic] me down last night had it." In a police interview conducted after his arrest, defendant stated that 30 to 40 people had witnessed his attempted arrest on the previous night and that someone from the crowd ran up to and struck the officer in the head. Defendant denied striking the officer.

Two inmates at the Vermilion County Jail, Loren Lomax and John Sharp, testified regarding the Driver brothers' statements at the jail. Lomax overheard McKinley Driver's conversation with three other inmates during a card game. According to Lomax, McKinley was angry at one card player for calling him "Flashlight Mac." Lomax testified that McKinley then gave a detailed description of how he beat Farnsworth on January 22, 1976. John Sharp testified that he was a "jailhouse lawyer" to whom the defendant came for advice. Defendant admitted to Sharp that he and another person had beaten a police officer. Defendant told Sharp that the other person stopped hitting the officer after realizing what they were doing, but that they resumed the beating so that the officer would be unable to identify his assailants. Defendant told Sharp that the officer was running a ticket check on him.

On appeal, defendant contends that: (1) the prosecutor's closing argument deprived him of a fair trial; (2) his guilt for the murder and aggravated battery offenses was not proved beyond a reasonable doubt; (3) the court abused its discretion by receiving into evidence the boots which both the defense expert and the State criminologist had examined, and by excluding the testimony of the defense expert while admitting the testimony of the State criminologist; (4) the court abused its discretion by

allegedly restricting defendant's cross-examination of Mae Anne Landfair; and (5) the court abused its discretion by excluding a defense expert's testimony concerning defendant's limited mental abilities.

During his closing argument, the prosecutor charged that defendant lied during the course of his testimony, that he was poorly coached by his attorney, and that defense counsel was not entirely ethical in her representation of the defendant.

■■ Unless a prosecutor's comments have prejudiced the defendant, they are deemed to be harmless error because they have not been "* * * a material factor influencing defendant's conviction * * *." (*People v. Skorusa* (1973), 55 Ill. 2d 577, 585, 304 N.E.2d 630.) A prosecutor may state that a witness' testimony is false if he relies on the evidence and inferences from it to support his statement. (*People v. Jackson* (1974), 19 Ill. App. 3d 689, 695, 312 N.E.2d 405.) Unprofessional, personal attacks on opposing counsel are "highly improper" but they need not be of such a magnitude to require reversal. (*People v. Burnett* (1963), 27 Ill. 2d 510, 516-18, 190 N.E.2d 338.) The credibility of witnesses may also be commented upon (*People v. Oden* (1975), 26 Ill. App. 3d 613, 617, 325 N.E.2d 446), or, as Justice Underwood has stated: "It is proper for the prosecuting attorney to reflect unfavorably on the accused, and to denounce his wickedness and even indulge in invective; he may dwell on the evil results of crime and urge a fearless administration of the law. [Citations.]" *People v. Wright* (1963), 27 Ill. 2d 497, 500-01, 190 N.E.2d 287.

Although we do not approve of the tone of portions of the prosecutor's closing argument in the instant case, it is our belief that the overall argument was a fair commentary on the evidence presented to the jury, that no part of the argument influenced the jury in a manner which resulted in prejudice to the defendant and that the court did not abuse its discretion in controlling that argument. *People v. Fain* (1976), 41 Ill. App. 3d 872, 879, 355 N.E.2d 61.

The credibility of witnesses is essentially a matter within the province of the jury which need not accept the defendant's theory where other evidence supports a contrary theory. (*People v. Rogers* (1975), 31 Ill. App. 3d 981, 986, 335 N.E.2d 48; *People v. Abbott* (1977), 55 Ill. App. 3d 21, 23, 370 N.E.2d 286, 288.) Mae Anne Landfair witnessed much of the incident and she testified that she saw defendant in apparent conversation with the police officer. The officer was just standing there. McKinley Driver ran to the scene, took something from the policeman and hit him twice, thereby causing him to fall to the ground. In a pretrial statement given to the police, defendant acknowledged that he had kicked the prostrate policeman with his heavy work boots. Landfair's testimony and defendant's pretrial statement correspond with the testimony of Sharp

and Lomax who testified that, while in jail, the Driver brothers admitted they brutally beat the policeman.

■■ Defendant seems to contend that the concept of self-defense permits the use of force against an unlawful antagonist even after the antagonist had been subdued or is lying helpless on the ground. Defendant's argument is premised on *People v. McGraw* (1958), 13 Ill. 2d 249, 256, 149 N.E.2d 100, wherein the court stated that: "* * * he need not attempt to escape but may lawfully stand his ground and meet force with force, * * * if necessary *or apparently necessary* to save his own life or to prevent great bodily harm. [Citation.]" (Emphasis added.) In *McGraw*, however, the defendant's conviction for killing an off-duty police officer was reversed because the defendant, an apparently peaceful garbage truck driver, was repeatedly beaten by the officer who *showed no apparent inclination to cease beating the defendant. McGraw* does not hold that a person is justified in employing deadly force against an antagonist after the antagonist has been effectively subdued. Rather, deadly force can only be employed up to the point where the antagonist has been disarmed or disabled. (*E.g., People v. Limas* (1977), 45 Ill. App. 3d 643, 652, 359 N.E.2d 1194.) Even if the victim of the instant crime had been an antagonist, defendant clearly exceeded the lawful amount of force which could have been used to repel that attack. In any event, the evidence seems to clearly reflect that it was the defendant, not the victim, who was the antagonist in this case.

■■ The parties fail to discuss whether defendant can be convicted of murder where the evidence reflects that the victim's death occurred only after physicians removed the victim from a respirator at the request of the victim's family. Here, the evidence reflects that the victim's brain wave pattern was flat (*i.e.*, that brain death had occurred) prior to removal from the respirator. (See generally Ad Hoc Committee of the Harvard Medical School, *A Definition of Irreversible Coma*, 205 J. Am. Med. A. 85 (1968); Veith *et al., Brain Death*, 238 J. Am. Med. A. 1651 (1977), 238 J. Am. Med. A. 1744 (1977).) On this evidence, it thus appears that the cause of the victim's death was the beating on January 22, 1976, and not the removal from the respirator on January 27, 1976. *State v. Brown* (1971), 8 Ore. App. 72, 75-76, 491 P.2d 1193, 1194-95; Annot., 65 A.L.R.3d 283 (1975).

We note that the defendant bears the burden of choosing his defense tactics and of preserving alleged errors for review. Although our discussion of the cause of death problem present in this case is necessary to a clear understanding of the entire case, we also recognize that defendant has failed to raise it for our review.

Defendant attempted to present an alleged expert, Herbert McDonnell, who would testify in regard to the splatter characteristics of human blood

and to the blood stains present on defendant's boots. Expert testimony is admissible when the witness' experience and qualifications give him knowledge not common to the world which will aid the jury in its determination. (*People v. Gillespie* (1974), 24 Ill. App. 3d 567, 575, 321 N.E.2d 398.) After reviewing the offered testimony, we find that even if the evidence could arguably be the subject of expert evaluation, the exclusion of the proffered testimony would, at best, constitute only harmless error.

During the presentation of the State's case-in-chief, counsel for defendant moved to exclude the testimony of James Bald, a State criminologist, concerning defendant's work boots because it was irrelevant and its probative value, if any, would be outweighed by its prejudicial effect. The court denied the motion. The court stated that the relevance of the testimony depended on other evidence presented by the State and that it would hear the testimony and that during the testimony, after the testimony, or at any time during the presentation of the State's case, the court could make appropriate rulings and enter such orders as might be necessary to protect the defendant's rights.

■■ James Bald then testified concerning the tests he had run on defendant's work boots. Bald testified that those tests indicated the possible presence of blood at various places on both boots and the clear presence of human blood on the toe of each boot. He could not determine the blood type because the samples of crusted blood which he had taken from each boot were used up in the test for the presence of blood. At the close of Mr. Bald's testimony, defense counsel made no motion to strike nor did she make a motion at any time during the presentation of the State's case-in-chief. At the close of the presentation of the State's case (when various exhibits were offered into evidence), defendant's counsel specifically withdrew her objection to the admission of the work boots.

■■ It is well established that the court is not required to exclude evidence, *sua sponte*, where the parties fail to object. (*People v. Williams* (1963), 28 Ill. 2d 114, 116, 190 N.E.2d 809, 810.) Although defendant moved to exclude the boots and to strike Bald's testimony at the end of the defendant's case, those motions were dilatory in nature. An objection to the admission of evidence must be made in apt time or it will be deemed to have been waived. *People v. Trefonas* (1956), 9 Ill. 2d 92, 98-99, 136 N.E.2d 817, 820.

Defendant alleges that the court abused its discretion by interfering with McKinley Driver's attorney's cross-examination of Mae Anne Landfair. Counsel apparently wished to elicit testimony from the witness to the effect that the authorities promised her that, if she gave a statement concerning the instant case, they would not prosecute her for obstruction

of justice. Counsel, however, was unable to elicit such testimony. The witness testified that she was arrested on January 24, 1976, for obstruction of justice, but stated that she did not know the basis of the charge. She testified that she did not give a statement to the police when she was arrested, but that she did make a statement to Mr. Doyle the following Monday when she was taken to the courthouse. The court then sustained an objection to the question, "Now you were not charged, you were not prosecuted for obstruction of justice, were you?" There had been no showing of any relationship between the obstruction of justice charge, the instant case, and the witness' giving of a statement. This deficiency was explained to counsel at a side bar conference a few moments later. Defense counsel then resumed questioning, attempting to lay a proper foundation. He asked the witness whether she had any conversations with the police after her arrest. She testified that she did not speak with the police on January 24, 1976, the day of her arrest, or on January 25 or 26, 1976. She testified that she did speak to police officers and to the State's Attorney in the State's Attorney's office on Monday, January 27, 1976, but she could not recall what was said at that meeting.

In view of this record, we cannot understand how defendant's argument on this issue has any basis in fact. It appears that a full cross-examination was permitted by the court, so there is no factual basis for defendant's contention.

Defendant finally urges that the court improperly limited the testimony of defendant's expert witness, Dr. Warren McPherson, by refusing to allow the witness to testify to his conclusions concerning the mental ability of the defendant, Eddie Driver. The State contends that the trial court properly excluded the testimony because the witness did not testify to facts upon which his conclusions were based.

■■ The admission of the opinion of an expert, like the admission of any evidence, is a matter within the discretion of the trial court. (*People v. Wade* (1977), 51 Ill. App. 3d 721, 727, 366 N.E.2d 528, 533.) However, before an expert should be allowed to state his opinion, the facts upon which that opinion is based must be in evidence. The admissibility of expert testimony is conditioned upon the laying of such a proper factual foundation. Where an expert bases his opinion upon facts personally known to him, he must testify to those facts. The reason for this requirement is to safeguard the reliability of the expert's testimony. *People v. O'Neal* (1969), 118 Ill. App. 2d 116, 123, 254 N.E.2d 559, 562.

■■ In the instant case, McPherson either had no objective facts on which to base his conclusions or he was unwilling to share them with the jury. As a consequence, the court did not abuse its discretion by excluding his testimony. In addition, after McPherson's testimony was excluded, the jury later heard the testimony of John N. George, a registered

psychologist who had administered a series of intelligence and reading tests to the defendant. The results of George's tests indicated that the defendant was mildly retarded and had an exceptionally poor reading ability. George's testimony was substantially the same as that portion of McPherson's testimony which was excluded because of its lack of foundation. It is well established that rejection of evidence is not prejudicial in a criminal case where substantially the same evidence is admitted at some subsequent stage of the trial. (*People v. Limas* (1977), 45 Ill. App. 3d 643, 648, 359 N.E.2d 1194, 1198.) Thus, the exclusion of McPherson's testimony cannot, under the circumstances of this case, be deemed prejudicial to the defendant.

Defendant's murder and aggravated battery convictions arose out of the same occurrence and are based on the same physical act. Therefore, defendant's conviction and sentence for the lesser included offense—aggravated battery—cannot stand. *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.

For the foregoing reasons, we affirm defendant's convictions and sentences for murder, resisting or obstructing a peace officer, and escape, but we reverse defendant's conviction and sentence for aggravated battery. On remand, the court is directed to issue an amended mittimus in accordance with this opinion.

Affirmed in part, reversed in part, remanded with directions.

GREEN, P. J., and MILLS, J., concur.