THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HOWARD HUGHES, Defendant-Appellant.

First District (4th Division)   No. 77-527

Opinion filed May 17, 1979.

Ralph Ruebner and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and James V. Marcanti, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Howard Hughes, defendant, was indicted for armed robbery, burglary and attempt rape. All of the charges arose from a single incident involving two complaining witnesses, Linda Bright and Will Dickens. Following a bench trial, the defendant was found guilty of the armed robbery and the burglary relating to Will Dickens. He was sentenced to a term of not less than 6 years nor more than 12 years for the offense of armed robbery, and a term of not less than 4 years nor more than 12 years for the offense of burglary, to be served concurrently in the Illinois State Penitentiary. He appeals and we affirm.

The defendant contends on appeal that the trial court erred in refusing to allow the impeachment by a prior conviction of the complaining witness, Linda Bright.

While we agree that the trial court erred in not allowing into evidence the impeachment testimony, nevertheless, we will not reverse because the evidence of guilt was overwhelming. The facts relevant to this appeal are as follows.

Linda Bright and Will Dickens testified they arrived at Ms. Bright's apartment located in Chicago, Illinois, at 3:45 a.m. on September 28, 1974. As Mr. Dickens was closing the door, two armed men forced their way into the apartment and announced a hold-up. One of these two men was identified as the defendant, Howard Hughes. Money was taken from Mr. Dickens. Defendant then told Ms. Bright to undress. She testified that she was ordered to get dressed and undressed several times. The two men discussed killing Mr. Dickens, but the second man decided to take him

outside where, on the street, Dickens escaped and ran to locate a police car. Ms. Bright testified that after she removed her clothes, defendant told her to lie on the couch. According to Ms. Bright, defendant removed his clothes and was attempting to have intercourse with her when the police came to the apartment with Mr. Dickens.

After Dickens found a police officer, he accompanied him to the apartment. The apartment door was locked and defendant refused to allow them inside. Other officers arrived on the scene at approximately the same time. Hughes threatened to kill Ms. Bright if they entered the apartment. Officer Coleman testified that after a few minutes defendant allowed them to enter. He stated that upon his entry he observed the defendant in shorts and Ms. Bright nude. The apartment was in disarray with the contents of several drawers emptied on the floor. The officer later searched the apartment for weapons and found none.

The defendant's first witness was former police officer Carrington who testified he was on patrol with another officer the night of the incident. He stated that Ms. Bright did not tell the officers defendant had attempted to rape her. She stated that she knew him and he was her boy friend. Carrington also stated that he was on suspension from the police department at the time of trial.

After the officer testified, the defense offered a certified copy of a conviction for theft by Ms. Bright. The trial court ruled that Ms. Bright's misdemeanor conviction for theft of services could not be used to impeach her.

The defense introduced evidence that although Ms. Bright testified that she left her job voluntarily, Carol Kloster, a supervisor at that company, stated she had been fired and had a record of excessive absenteeism. The defense introduced further evidence regarding Ms. Bright by calling Mrs. Elois Scott, a member of the building management at Ms. Bright's address at the time of the incident. Mrs. Scott testified that Ms. Bright did not pay her rent and she had put several notices under her door regarding payment.

Based on the evidence at trial, the jury found defendant guilty of burglary and the armed robbery of Mr. Dickens.

■■ The general rule regarding impeachment of witnesses with evidence of their prior criminal conduct was set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698. In *Montgomery*, the Illinois Supreme Court held that proof of prior convictions for purposes of impeachment was to be governed by Rule 609 Adopted by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States. The rule provides that (1) evidence of the credibility of a witness is admissible if the crime was punishable by

death or imprisonment in excess of 1 year under the law under which he was convicted, or (2) involved dishonesty or a false statement regardless of the punishment; (3) proof of the prior conviction should not be admitted if the court determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice; and (4) the conviction or the release from confinement must have been within the last 10 years. The prior conviction introduced to impeach the witness in the instant case was for theft of services, a misdemeanor. This court has held that misdemeanor convictions may be used for impeachment purposes if the other requirements of *Montgomery* are met. (*People v. Thomas* (1978), 58 Ill. App. 3d 402, 405, 374 N.E.2d 743, 746; *People v. Ray* (1976), 36 Ill. App. 3d 283, 286, 343 N.E.2d 560, 562.) Further, the *Montgomery* rule applies to all witnesses at a trial, whether it is civil or criminal. *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 460, 366 N.E.2d 1064, 1067.

"The prior conviction introduced to impeach defendant [witness] in the instant case was for the offense of theft, an offense which reflects adversely on a person's honesty and integrity and thus relates to his credibility." *People v. Graham* (1975), 27 Ill. App. 3d 408, 413, 327 N.E.2d 261, 265.

■■ The certified copy of the conviction for theft of services by Ms. Bright should have been allowed into evidence. It met the test enunciated in *Montgomery*. It was a 1974 conviction, thus, within the 10-year time limit, and it involved a crime of dishonesty. We do not believe that the trial court properly determined the probative value of this evidence, and the court improperly refused to allow the impeachment evidence.

However, the purpose for the impeachment evidence of Ms. Bright was to cast doubt on her credibility as the State's witness. Although the evidence of the prior conviction was not allowed into court, other testimony bearing on her credibility was admitted. Elois Scott testified that Ms. Bright did not pay her rent and she had placed several notices under her apartment door. Also, defense witness Carol Kloster testified that Ms. Bright had been fired from her job and had numerous absences. Former police officer Carrington testified that Ms. Bright knew defendant and that she stated he was her boy friend.

It is clear that the jury had doubts as to Ms. Bright's credibility when they returned the verdict. They did not find defendant guilty of attempt rape or of the armed robbery of Ms. Bright, but only guilty of the charges against Mr. Dickens.

■■ Where the error has not affected the outcome of the case, a judgment will not be set aside by a court of review. (*People v. Limas* (1977), 45 Ill. App. 3d 643, 652, 359 N.E.2d 1194, 1201.) Although the evidence of the

608

witness' prior conviction was erroneously excluded, the testimony of the other witnesses relating to Ms. Bright was substantial enough to impeach her credibility and therefore did not affect the final outcome.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P. J., and LINN, J., concur.