THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARVIN D. KNOX, Defendant-Appellant.

Third District   No. 82—881

Opinion filed January 26, 1984.—Rehearing denied March 1, 1984.

580

STOUDER, P.J., dissenting.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Patricia Hartmann, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Marvin D. Knox, was charged by indictment with the murder of his wife, Delia Knox. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(2).) Following a jury trial in the circuit court of Peoria County, the defendant was found guilty of murder and was sentenced to 25 years' imprisonment. The defendant filed a timely notice of appeal. The following evidence was presented at trial.

Officer Michael Butterfield of the Peoria Police Department responded to a call at 313 South Western in Peoria County, Illinois, on August 16, 1982. When he arrived, he saw a black male, identified as the defendant, walking out the front door. The defendant had his arms outstretched and his hands were bleeding. Butterfield asked what had happened and the defendant responded, "My wife came at

me with a knife. I took it away from her and stabbed her." The defendant was handcuffed.

Officer Richard Johnson arrived at the scene, and the defendant was placed in his squad car. Johnson then went into the house where he found a woman, identified as Delia Knox, lying on a bed in a bedroom. The bedroom was in disarray. A knife was found about 18 inches from the woman.

Paramedics arrived and began to administer first aid to the woman. Johnson returned to his car and read the defendant the *Miranda* rights. The defendant cooperated with the police.

Officer Craig W. Ganda arrived at the house. He was assigned to the crime scene unit. Ganda observed fresh blood on the sidewalk and in the doorway. He observed the victim on the bed and a great deal of blood on the bed and walls. Before the paramedics removed the woman, Ganda opened her blouse and observed wounds to her body. Ganda found a second, smaller knife in the immediate area of the woman, but its blade was closed.

Ganda was offered as a blood-flight specialist after he stated his qualifications. The defense objected to this offering but was overruled. Ganda then went on to explain that the blood seemed to emanate from a central area. However, in response to a question asked by defense counsel during cross-examination, Ganda said that in his opinion, it appeared the woman was stabbed while lying down on the bed. It also appeared that there were two different blood types in the bedroom.

Delia Knox was treated at St. Francis Hospital. The attending physician found the wounds to be on her left side. She died at 3:30 p.m. on August 16, 1982. It was determined from an autopsy that Knox died as a result of massive blood loss from an injury to her heart.

The defendant told police officers that he was married to Delia Knox for four months. He had moved out of the house the night before the incident. The defendant returned to the house on August 16, 1982, at about 1 p.m. to retrieve some of his belongings. When he tried to remove the Home Box Office (HBO) unit from the television, his wife came at him from behind with a knife. He struggled with her and took the knife away from her. The defendant was aware he cut his wife in the stomach, and he knew he cut her more than twice. His hands were cut, his chin was scratched and his shoulder was injured in the struggle.

The defendant's 14-year-old stepdaughter, Janette Rose, was present during the incident. She testified that the night before her

mother and the defendant were arguing. During the argument, the defendant stated, "You know what, I should kill you and myself, too." The police arrived and the defendant left the house.

The next day, August 16, 1982, the defendant returned to pick up his clothes. The defendant took a bag from the refrigerator and went into the bedroom. Delia followed him. Janette was in the living room and although she could not see into the bedroom, she heard her mother say, "Deano, let go of the phone. I am not going to call the police." The defendant came out of the bedroom and went into the kitchen. Janette saw him take a knife from the drawer which he placed behind his leg and then he returned to the bedroom. At that point, Janette left the house to call the police.

Kisha Rose, the defendant's 12-year-old stepdaughter, was also present on the day of the incident. She let the defendant into the house and went upstairs where she observed the defendant go into the kitchen. She heard the refrigerator door open and saw the defendant walk to the bedroom carrying a brown paper bag. She heard her mother say, "Let go of the phone, Deano. I am calling the police." Then the defendant returned to the kitchen, and Kisha heard a drawer open. He walked back into the bedroom with his hands at his side.

Kisha heard her mother and the defendant fighting. Her mother was saying, "Stop, Deano, stop. I love you, Deano, stop." Kisha ran downstairs and saw the defendant pulling a knife out of her mother's side. The defendant was standing while her mother was in a leaning position on the bed. The defendant said, "You are going to die," and then he stabbed Delia again.

The defendant testified on his own behalf. He and Delia argued the night before, and the police were summoned by Delia. Before he left the house, he gave his keys to the officers. The next day, August 16, 1982, he phoned the house and told his stepdaughter that he would be by to get his clothes. When he arrived, Kisha let him inside the house.

Once inside, the defendant went into the bedroom and Delia followed him. As he was disconnecting the HBO unit, his wife said, "I told you you ain't taking anything out of here." The defendant heard footsteps coming from behind him. He turned and saw his wife coming at him with a knife. The defendant wrestled with her. Delia fell back on the bed and the defendant saw her eyes roll. He threw the knife on the side of the bed. Then, the defendant dialed the 911 police number and reported that he thought he killed his wife. He asked for the police or an ambulance.

The defendant walked out the front door where he was subsequently placed under arrest. He denied stabbing Delia three times and denied saying, "You are going to die."

The first issue raised by the defendant concerns a discovery violation. He asserts that the State failed to inform the defendant that Officer Craig Ganda would be used as an expert in blood splattering and that the State also failed to provide a statement of his qualifications. (87 Ill. 2d R. 412(a)(iv).) Because of this failure to comply with discovery, the defendant argues he was subjected to surprise evidence and asks for a new trial.

■ When the State offered Ganda as a blood-flight specialist, the defendant objected on the ground that that was not a recognized area of expertise. The defendant did not object because the State failed to designate Ganda as an expert during discovery nor did the defendant request a continuance in order to investigate this matter further. Although the defendant raised the discovery issue in his post-trial motion, the defendant cannot complain when he fails to object at trial and request a continuance. The defendant has waived this issue for purposes of review. *People v. Callaham* (1978), 60 Ill. App. 3d 1020.

■ The defendant's second issue is whether the trial court erred in permitting Officer Ganda to testify as a blood-flight specialist. The defendant argues that blood-flight evidence is not an admissible area of expertise in Illinois and that the State failed to lay a proper foundation to establish the reliability of such evidence. The defendant also states that Ganda was not qualified as an expert in this field.

The admissibility of Officer Ganda's expert testimony and the adequacy of his qualifications are matters left to the discretion of the trial court. The court's decision to permit Officer Ganda to testify is subject to reversal only if it constituted an abuse of discretion. *People v. Park* (1978), 72 Ill. 2d 203.

Since we are aware of no cases in which an Illinois court has taken judicial notice of the reliability of the splatter characteristics of human blood, the burden is on the State to demonstrate the reliability of such evidence. (*People v. Milone* (1976), 43 Ill. App. 3d 385.) The State is required to show that the evidence is based upon a well-recognized scientific principle or technique which has gained general acceptance in the particular field in which it belongs. *People v. Baynes* (1981), 88 Ill. 2d 225.

Officer Ganda testified that he had attended a school in blood-flight splashings and patterns at Elmira College in New York. He also attended a blood-flight workshop at the St. Louis Medical Examiner's Office. Officer Ganda stated that his identification of blood patterns

was based upon experiments conducted with human blood. In his experiments, Officer Ganda would reproduce various bloodstains or splashes which he observed at crime scenes, thereby enabling him to deduce where the source of the blood splashings was located. This evidence is not of such a complex nature as to require a more detailed scientific foundation than that provided by Officer Ganda. The technique used by Officer Ganda is essentially one of pattern recognition and reconstruction. Contrary to the defendant's position, we do not find that this evidence requires a foundation in the science of physics.

Furthermore, we disagree with the defendant's assertion that bloodstain evidence cannot be the subject of expert evaluation. In *People v. Driver* (1978), 62 Ill. App. 3d 847, cited by the defendant, the court held that the trial judge did not err in refusing to admit testimony concerning bloodstains found on the defendant's shoes. The appellate court reviewed the offered testimony and concluded that even if the evidence could arguably be the subject of expert evaluation, exclusion of the evidence constituted harmless error at best. The court never discussed whether the State laid a proper foundation for the evidence. Thus, we do not read *Driver* as conclusively establishing the unreliability of bloodstain evidence.

Unlike *Driver*, the record in the present case reveals an adequate foundation for the evidence in question. Officer Ganda testified as to the source of his training, the techniques he had learned and their application in the field. The court was provided with sufficient information to enable it to make an informed decision regarding the reliability of this evidence.

◼ Next, the defendant states that Officer Ganda was not qualified to testify as an expert in the field of bloodstain evidence. At trial, Ganda testified that he had been a Peoria police officer for over 12 years and was a crime-scene investigator for 10 years. In addition to his formal training in the field of blood characteristics, he had read literature in the field, had observed bloodstain evidence at crime scenes for about 10 years and had previously testified as a blood-flight specialist. The degree and manner of knowledge and experience required of an alleged expert is directly related to the complexity of the subject matter. (*People v. Park* (1978), 72 Ill. 2d 203.) Having already examined the nature and complexity of the evidence offered by Ganda, we again reject the defendant's argument that this area of expertise requires substantial training in physics. Officer Ganda's qualifications as an expert in the field of bloodstain evidence are clearly set out in the record, and the trial court did not abuse its discretion in permitting him to testify.

■ Finally, the defendant argues that the court erred by considering as a statutory factor in aggravation the fact that the defendant's conduct caused serious harm. We agree with the defendant to the extent that serious bodily harm is an implicit factor in all homicides and therefore should not be considered as an aggravating factor. (*People v. Fowler* (1981), 98 Ill. App. 3d 202.) However, because sentencing decisions are largely within the discretion of the trial court, a sentence will not be disturbed on appeal absent an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149.

The defendant here was convicted of murder and sentenced to 25 years' imprisonment. The minimum sentence for murder is 20 years. Even though the court considered the fact that the defendant's conduct caused serious bodily injury, the court properly considered the presentence investigation report, the defendant's statement, other evidence in aggravation and mitigation and the recommendations of counsel. Based upon this record, we cannot say that a 25-year sentence was an abuse of the court's discretion. Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:

I do not agree with the majority that Officer Ganda's testimony as a blood-flight specialist should have been admitted at the trial. I base my opinion on several factors. First, I do not believe that Officer Ganda's three-week training course in New York qualified him as an expert in blood spattering. I also believe that the study of blood-flight characteristics is based upon the laws of physics and finally that the State's failure to notify the defense that Ganda was testifying as an expert further undermined the reliability of the testimony. I therefore conclude that the State did not lay an adequate foundation and that Officer Ganda's testimony should not have been admitted.

The study of blood patterns is not a widely-recognized field of expertise. The three-week course which Ganda testified that he had taken was taught by Professor MacDonald (MacDonnell) of Elmira College in New York. Mr. MacDonnell has testified in several out-of-State cases, and his testimony has been accepted in the following jurisdictions, Iowa, Louisiana, and Tennessee. (See *State v. Hall* (Iowa 1980), 297 N.W.2d 80; *State v. Graham* (La. 1982), 422 So. 2d 123; *State v. Melson* (Tenn. 1982), 638 S.W.2d 342.) However, in *State v.*

*Philbrick* (Me. 1981), 436 A.2d 844, 861, the Supreme Court of Maine ruled that an officer's blood-spatter testimony who had attended a three-week training course in New York taught by Prof. MacDonnell was inadmissible both because his qualifications were questionable and because the blood-spatter evidence raised serious questions as to relevance, helpfulness and potential prejudicial effect. Officer Ganda would not have been considered an expert by MacDonnell who stated in *Hall* that there are few persons in the United States qualified in his field. *State v. Hall* (Iowa 1980), 297 N.W.2d 80, 83.

Further, MacDonnell described his area of expertise as one based upon the laws of physics and mathematics (*State v. Hall* (Iowa 1980), 297 N.W.2d 80, 83), and on another occasion MacDonnell stated that "in physics it makes very little difference as to what the origin of the blood is ***" (*State v. Melson* (Tenn. 1982), 638 S.W.2d 342, 364), indicating that blood spattering is based largely upon physics. I, therefore, conclude that the State's foundation was inadequate to establish Officer Ganda as a blood-spatter expert.

In *People v. Driver* (1978), 62 Ill. App. 3d 847, 379 N.E.2d 840, the only Illinois case to consider blood-spatter testimony, the defense had attempted to have Prof. MacDonnell testify. The appellate court referred to MacDonnell as an "alleged expert" but did not decide whether the excluded testimony would properly be the subject of expert evaluation.

Normally, the defendant's opportunity to cross-examine the "expert" would increase the reliability of the expert testimony by casting doubt on the qualifications, etc. However, the assurances normally afforded by the opportunity to cross-examine were undermined in this case by the failure of the State to inform the defense that Ganda was planning to testify as a blood-flight expert. Therefore, I would have ruled that the blood-spatter testimony of Officer Ganda should have been excluded.