THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BERNARD EVANS, Defendant-Appellant.

Third District   No. 3—83—0459

Opinion filed March 16, 1984.—Rehearing denied April 20, 1984.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and John M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

After a jury trial in the circuit court of Peoria County, defendant Bernard Evans was found guilty of unlawful delivery of a controlled substance (LSD). He was sentenced to a term of two years' imprisonment and ordered to make restitution in the amount of $180 from his bond.

In his appeal, defendant presents three issues: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether prosecutorial misconduct deprived him of a fair trial; and (3) whether the sentencing judge exceeded his authority in ordering restitution.

The incident giving rise to the offense involved the sale by the

defendant of approximately 100 pills containing less than five grams of lysergic acid diethylamide (LSD) to 16-year-old Mike France on November 1, 1982. At defendant's trial, France testified for the State under a grant of immunity. Other State witnesses included Donna Kurlinkus of the Multi-County Drug Enforcement Group (MEG); Agent Harry Sweet, also of MEG; and forensic scientist, Jean Muehlfelt.

Since the defendant's first issue essentially challenges the credibility of the State's witnesses, we will detail their testimony as presented at trial.

MICHAEL FRANCE

According to France, he had met Agent Kurlinkus about a month prior to the instant drug sale while she was working undercover as "Karen Graham." Kurlinkus had been introduced to France as a friend of Gerald Price, an acquaintance of France.

Around 10 a.m. of November 1, 1982, Price and Graham arrived at France's home in Chillicothe. The three then drove in Price's car to a house at Edgewater Terrace where France was to purchase for Graham 100 "hits" of LSD from a known drug source, Toby Hutchinson. France knocked on the door of Hutchinson's house and waited about 15 minutes, but there was no answer. So he returned to Price and Graham and suggested they leave and come back a bit later since Toby usually was not gone long. They drove to a McDonald's restaurant and stayed there about an hour before returning to the Edgewater Terrace address. This time, France was admitted into the house by the defendant. France paid $180 from the $200 given to him by Graham and was given a plastic baggie containing 100 little pills known to him as purple microdot. When he returned to the car, France handed the bag of pills to Graham and told her to tell people not to take more than three hits at a time because it was very strong. He said that he had taken two the night before, and on the drive home all of the reflector lights along the side of the road were saying, "hi, hi, hi, hi." France had not, in truth, taken LSD the night before the transaction in question, but he had made the comment to Graham because he had taken some of the purple microdot on an earlier occasion. It was not that good, and he did not want Graham to be "bummed out."

On cross-examination France admitted that he had lied to the grand jury when he told them he did not use LSD. France said that, although he was sworn to tell the truth on that occasion, he had not been represented by counsel and he knew nothing about the law.

DONNA KURLINKUS

Kurlinkus (Graham) had been introduced to France through her confidential source, Gerald Price. She related that she and Price picked up France at 11:30 a.m. on November 1, 1982. They drove to a house at 14905 Fruitland in Edgewild Addition and parked in the driveway. France told Kurlinkus that the acid she wanted cost about $1.80 a hit. She gave him $200 in $50 bills for 100 "hits" and told France to keep the change. Kurlinkus intended to give France the impression that she had a lot of money so that at some later time she could get France to introduce her to a large drug supplier under the guise that she wanted to deal in thousand lots.

France went to the door of the house just south of the address where the car was parked. It was raining very hard at the time, and France came back within a few minutes and reported that Toby was not there. At France's suggestion, the three left for about an hour and then returned to the Fruitland address. Upon their return, Kurlinkus said there were several men working around the house looking at old cars. France went up to one with dark or black hair and they proceeded together inside the house.

When France returned to the car, Kurlinkus asked if the man he bought from was Toby and France said, "No, that was Bernie." After dropping France back to his home, Kurlinkus field-tested the pills and ascertained that they contained LSD. The pills were subsequently delivered to the Morton crime lab for further testing.

At trial, Kurlinkus identified the defendant as the person she saw going into the house with France, but admitted that his hair was not dark. She explained the discrepancy by observing that his hair had been soaked by the rain when she saw him on November 1 and that it had appeared black under those conditions. She was, nonetheless, certain that she recognized the defendant's face from her earlier viewing of him.

JEAN MUEHLFELT

Forensic scientist Jean Muehlfelt of the Morton crime lab testified as an expert witness for the State. Based on her tests of the pills, she concluded that they contained LSD.

HARRY SWEET

Finally, another MEG agent, Harry Sweet, testified that he had arrested the defendant on January 26, 1983, on the unlawful delivery charge. The defendant was read his *Miranda* rights, and he agreed to talk with the agent. Sweet read to the defendant the report filed by

Agent Kurlinkus concerning the November 1, 1982, drug deal and then asked the defendant what he knew about the transaction. The defendant said he didn't know a Mike France and he did not remember having sold 100 hits to a Mike France. Nonetheless, the defendant admitted that Toby Hutchinson had been a roommate of his and that Hutchinson made monthly or bi-monthly trips to Michigan with $10,000 in cash to purchase LSD at $.64 a hit and then sold it from the Chillicothe residence at about $1.80 a hit. The defendant volunteered to turn over telephone bills displaying calls to Michigan made by Hutchinson. The defendant marked the long distance numbers called by Hutchinson in connection with the drug business for the agent's use.

■ The defendant on appeal takes the position that the immunized testimony of the State's star witness, Mike France, was not sufficiently credible to sustain a verdict of guilty and that Agent Kurlinkus' version was inconsistent in too many details to be considered corroborative of France's story. While it is true that France was shown to have lied under oath about his own drug use when he gave testimony against the defendant and he admitted having lied to "Graham" when he told her that the acid she bought was strong, we believe that France's credibility at trial was a matter properly placed before the jury to be weighed in their determination of the verdict. France was only 15 years old and, although streetwise, the jury could have believed that he had had little enough experience with the criminal justice system not to have understood the consequences of perjury when he lied to the grand jury. The fact of France's lies was thoroughly explored during defense counsel's cross-examination, as was the fact of the State's grant of immunity for this drug transaction and two earlier ones he had participated in with Agent Kurlinkus. In redirect examination, the State brought out France's understanding that he would be prosecuted for perjury if he lied from the witness stand and that France did not want to testify in this trial. In our opinion, France's credibility was sufficiently tested at trial to permit the jury to believe or disbelieve the evidence testified to by him. The jury was properly instructed on accomplice testimony. The testimony of an accomplice is sufficient to sustain a conviction in Illinois if it satisfies the trier of fact beyond a reasonable doubt. (*People v. Nathaniel* (1981), 103 Ill. App. 3d 610, 431 N.E.2d 1080.) It is apparent from the jury's verdict that this standard was met here.

We do not find Kurlinkus' testimony, although differing as to certain details, so radically contrary to that of France's that it can not be believed. In many significant respects, Kurlinkus corroborated the

substance of France's testimony. France did not indicate that he met the defendant prior to entering the house. However, France was not asked whether or not he had met the defendant outside of the house on the second trip to the Fruitland address. Thus, the jury could reasonably have believed that France did not mention that particular detail because it was not significant to him. To Kurlinkus, who testified that they had met prior to entering the house, the detail was of great significance because she wanted to remember the appearance of the person France talked to outside of the house for purposes of possible later identification of the drug dealer that she suspected was Toby Hutchinson. Her explanation of the discrepancy in the defendant's hair color was not so implausible as to destroy Kurlinkus' credibility. In court, Kurlinkus hesitated when asked to identify the person she had seen going into the house with France. She explained the hesitancy on cross-examination by saying she wanted to make sure the man seated at defendant's table was not "a cousin or drugger." Finally the discrepancy between "Edgewater Terrace" and "Edgewild Addition" to describe the location of the Fruitland Avenue house is not so great as to render the testimony of France and/or Kurlinkus so inconsistent as to be unbelievable. The demeanor and responses of a witness at trial are to be weighed in the determination of the witness' credibility. On appeal a jury's determination of witness credibility will not be set aside unless it is so unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Pittman* (1982), 93 Ill. 2d 169, 442 N.E.2d 836.

Although the defendant's statement to Sweet was largely exculpatory, it, too, in some respects corroborated the testimony of France. The defendant admitted having been a roommate of Hutchinson's at the address where the November 1 deal was made. Although the defendant denied knowing France, he did not affirmatively deny having sold LSD to him. He merely said he couldn't remember the particular transaction. The price the defendant quoted for a hit of acid from Toby matched the amount France had paid on November 1.

We find that the evidence, taken as a whole, was sufficient to prove the defendant guilty beyond a reasonable doubt of unlawful delivery of a controlled substance.

■ Defendant's second issue concerns several incidents of what defendant characterizes as prosecutorial misconduct. The first such incident stemmed from the prosecutor's attempts to elicit testimony from Agent Kurlinkus about France's conversation with her in the car after the 100-hit purchase in which Kurlinkus attempted to discuss a larger future purchase. Defense counsel objected to the hearsay as-

pects of the testimony and the trial court sustained the objection on this basis. The prosecutor made two more attempts to reach the substance of that conversation, but was unsuccessful, since defense counsel objections were sustained each time. The prosecutor then abandoned the line of questioning and proceeded to other matters.

On appeal, defendant contends that the prosecutor's repeated attempts to elicit testimony about future drug deals prejudiced the defendant because it improperly accused him of other criminal activity for which he had not been charged. We cannot agree. By promptly sustaining defense counsel's objections, the trial court short-circuited any prejudicial testimony that might have implicated the defendant in other criminal enterprises. Our review of the record convinces us that the prosecutor's persistent questioning in this area was prompted by an attempt to avoid the hearsay problem. Defense counsel did not object on grounds of relevancy or "other crimes." In our opinion, the defendant has waived the "other crimes" objection and, in any event, the defendant was not prejudiced by the prosecutor's questioning.

■ Similarly, we find that the prosecutor's closing argument and rebuttal argument did not contain such highly prejudicial comments ·as to deprive this defendant of a fair trial. The prosecutor's misstatement of the evidence at one point was cured by the trial court's prompt admonition to the jurors to use their own collective ability to determine what the evidence admitted at trial was and to draw reasonable inferences therefrom. At another point, where the prosecutor commented that she was not apologizing for having given France immunity to procure his testimony against the adult defendant, the trial court ruled that the comment bordered on being inflammatory and thoroughly admonished the jury that they were to disregard the comment in their consideration of a verdict. We do not find that any error was committed in the trial court's rulings. A mistrial was not warranted for any of the comments complained of. Nor can we say that the cumulative effect of the purportedly prejudicial comments was such as to deprive the defendant of a fair trial. In our opinion, any prejudice that might otherwise have resulted was adequately cured by prompt rulings and admonishments by the trial judge. Accordingly, we affirm the defendant's conviction.

■ In defendant's third issue he argues that the trial court exceeded its sentencing authority in ordering restitution of $180 to MEG. The amount so ordered is the amount France gave the defendant out of the $200 handed to him by Kurlinkus for the 100 hits of LSD she requested. The State contends that the issue is waived since it is being advanced for the first time on appeal. A similar argument was made and rejected in *People v. Daugherty* (1982), 104 Ill. App. 3d

89, 432 N.E.2d 391. There, as here, the defendant contended that the entity to whom restitution was to be made (the insurer of the complaining witness' damaged property) was not a crime "victim" as that term was used in the statute authorizing restitution as part of a sentence. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6.) The *Daugherty* court initially determined that even though the order of restitution had not been challenged at the trial level, the appellate court had jurisdiction to decide the issue, inasmuch as the defendant's position, if correct, meant that the portion of the order attacked was void and "a void order may be attacked at any time." (*People v. Daugherty* (1982), 104 Ill. App. 3d 89, 92, 432 N.E.2d 391, 394.) For the same reason, principles of waiver are not applicable here.

■ While certainly we would be remiss were we to hold that unlawful delivery of a controlled substance is a victimless crime, we would be blinking reality were we not to acknowledge that many, if not most, offenders are brought to justice through the efforts of undercover agents making buys with public monies. We will not, however, strain the commonly accepted understanding of the word "victim" so as to include the public drug enforcement agency, MEG, in the case before us. Where public monies are expended in the pursuit of solving crimes, the expenditure is part of the investigating agency's normal operating costs. The governmental entity conducting an investigation is not therefore considered a "victim" to the extent that public monies are so expended. *Evans v. Garrison* (4th Cir. 1981), 657 F.2d 64.

A drug offender should not be permitted to profit from his illegal conduct and this policy is clearly recognized in the Controlled Substances Act. Rather than seeking restitution in a case such as this, the State might request the court to impose a fine (Ill. Rev. Stat. 1981, ch. 56½, par. 1401), or in the alternative, the State might institute forfeiture proceedings (Ill. Rev. Stat. 1981, ch. 56½, par. 1505).

As indicated above, we must conclude that the trial court's order of restitution was in error. In the exercise of our discretionary authority under Supreme Court Rule 366 (73 Ill. 2d R. 366), we elect to vacate that portion of the trial court's judgment ordering restitution in the amount of $180 to MEG. In all other respects the defendant's conviction and sentence are affirmed.

Affirmed as modified.

STOUDER and SCOTT, JJ., concur.