THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT AMOS, Defendant-Appellant.

Third District No. 3—84—0345

Opinion filed December 31, 1985.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

Defendant Robert Amos was convicted by a jury of murdering Brian Jackson at the Stateville Correctional Center. He was sentenced to 35 years. We remand for an *in camera* evidentiary finding by the trial judge. We otherwise affirm.

The first item we address is whether, as the State claims, defendant has waived consideration of any issue by this court due to his failure to file a post-trial motion required by section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 116—1). Generally, failure to file a post-trial motion waives all issues on appeal. (*People v. Thiel* (1981), 102 Ill. App. 3d 28, 429 N.E.2d 565.) There are certain exceptions to the waiver rule, such as plain error under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)).

■ "The reasons for the waiver rule are two-fold: To inform the trial court of a possible mistake so as to give it the opportunity to correct the mistake, and not to allow a defendant a chance to object to that which he has acquiesced in. [Citation.]" *People v. Hammond* (1977), 48 Ill. App. 3d 707, 708-09, 362 N.E.2d 1361; see also *People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.

■ Our examination of the trial record reveals that many of the now-complained-of events were objected to and well argued before the learned trial judge. He was well informed of defendant's objections and had ample opportunity to correct any error that may have occurred. Defendant claims that the issues raised constitute plain error or affect substantive rights. Thus, to allow the appeal as to the objected-to, well-argued issues would not be violative of the spirit of the waiver rule.

Defendant and five others (Karl Bell, Bruce Dawkins, William Young, Robert Taylor, and Paul Williams) were indicted for the murder of inmate Brian Jackson at the Stateville Correctional Center. The six were also inmates at Stateville. Upon a successful motion for a severance, defendant and William Young (codefendant) were jointly

tried apart from the others.

On March 31, 1983, Brian Jackson was found dead in the shower room of the multipurpose building at Stateville. The body had suffered a multitude of stab wounds. There was a large amount of blood on the floor and walls of the shower room. A "close down" was instituted. The area was secured, and approximately 150 inmates were screened and interrogated.

During the close down, defendant was noticed with no pants on, stuffing a pair of pants through the bleachers. The pants were seized by security. They had a "blood-like" stain on them.

Investigation of the shower room revealed two belts, a T-bevel with the blade broken off, a metal shank with one end sharpened, a knife found inside a glove, and two lengths of cotton rope.

The pathologist who performed the autopsy determined that Jackson died from the combined effects of exsanguination with shock and strangulation. Jackson suffered 122 cutting wounds, some characterized as "defense type" wounds. The pathologist also testified that the items found in the shower room were compatible with the wounds.

Paul Williams, a co-indictee and Jackson's cellmate, testified to the events of that day. He stated that he carried the shank and the T-bevel to the gym. He, the others, and Jackson were members of the Vice Lords street gang. Those involved met in the shower room to administer a "violation" (i.e., a punishment for breaking the rules of the gang) to Jackson, whereupon codefendant Young stabbed Jackson with the knife. The blade broke, so Young used another weapon. He stabbed Jackson in the head many times.

After the stabbing, everyone started cleaning up. Young, however, noticed that Jackson was still breathing and had a pulse. Young took the string from his sweat pants and strangled Jackson. The string broke. Young then took the belt from coindictee Dawkins and strangled Jackson further.

Paul Williams was in prison for escape, armed robbery, and rape. He was also offered the opportunity to make blind pleas of guilty to aggravated battery, mob action, and conspiracy to intimidate in exchange for his testimony for the State. The murder charge was to be dropped. It was also established that Paul Williams had made statements that conflicted with his trial testimony.

Over objection, an investigator was allowed to testify as to the statements made by Paul Williams prior to trial. These statements largely repeated his trial testimony.

Joe Williams also testified as to the events in the shower room. He had three convictions for burglary as well as convictions for resi-

dential burglary, possession of burglary tools, and theft. He was not charged in the instant case.

Joe Williams stated that the violation was to merely be a physical violation, with codefendant Young, defendant, and co-indictee Bell hitting Jackson. Young then stopped the violation, obtained the weapons, and repeatedly stabbed Jackson. Young then ordered Dawkins and Tucker to strangle Jackson. Dawkins' belt broke, so Young ordered Joe Williams to surrender his belt, which he did. Dawkins and Tucker then resumed strangling Jackson.

Joe Williams had been a heroin addict since 1974. He was never charged with murder, and was transferred within the Department of Corrections. He also made contradictory statements to investigating officers.

Defendant also testified. He stated that Jackson was aware of the violation. The violation was for the alleged rape of Dawkins by Jackson. Defendant administered the punishment—15 blows to the chest. Then, Joe Williams stepped in, asking for the weapons. Dawkins, Tucker, and Bell started stabbing Jackson over Young's objection. Defendant stated that neither he nor Young had any weapons or stabbed Jackson. He never saw the strangulation. He stated that while Jackson was being stabbed, he and Young left the shower room. He noticed the stains on his pants and took them off. He also admitted having lied to investigators over this due to fear for his life.

Co-indictee Bruce Dawkins testified in rebuttal. He stated that he had pled guilty to the instant charges, receiving a 25-year sentence. He stated that defendant, Young, and co-indictee Bell stabbed Jackson. After the stabbing, Dawkins and Tucker were ordered to strangle Jackson. The first belt broke, so they used another. Young also used the string from his sweatshirt to strangle Jackson.

Dawkins stated that Joe Williams was not in the shower room during the stabbing nor the strangling. He further stated that Paul Williams brought the weapons into the shower room. Finally Dawkins admitted that he, too, had lied to investigators.

The jury convicted both defendant and Young of murder. Defendant waived his right to a jury determination on the death penalty. (Codefendant Young requested a jury determination. That jury sentenced him to death. His appeal is before the supreme court pursuant to Supreme Court Rule 603 (87 Ill. 2d R. 603).) The trial judge found defendant eligible for the death penalty, but he also found a factor in mitigation that precluded imposition of the death sentence. Defendant was sentenced to 35 years to run consecutively to the sentence he was serving. He brings this appeal.

Defendant's first contention is that he was denied a fair trial due to the trial court's refusal to conduct an *in camera* inspection of the prosecutor's notes of interviews with the chief prosecution witnesses. The assistant State's Attorney prosecuting the case had interviewed Joe Williams and Paul Williams. This assistant had preserved her notes. Their testimony linked defendant to the murder weapons and the stabbing. The trial judge declined to inspect the notes *in camera* to determine if they contained any pertinent material.

■ The discovery rules in a criminal case entitle a defendant to summaries of oral statements by prosecution witnesses. (*People v. Bassett* (1974), 56 Ill. 2d 285, 307 N.E.2d 359; 87 Ill. 2d R. 412(a)(i).) In *People v. Szabo* (1983), 94 Ill. 2d 327, 447 N.E.2d 193, the supreme court balanced the interests of the defendant's right to discovery and the prosecutor's right to keep work product confidential. The court made a particularly controlling statement:

"These decisions make clear that, once the defendant has made a specific demand for a report of a statement, and has made a preliminary showing, by way of foundation, of the statement's pertinence to the witness' trial testimony, the court is to order the statement to be delivered directly to the defendant for his inspection and possible use in impeachment. The court is not to consider whether the prior statements would in fact be useful for impeachment; only the defense should be permitted to make that determination. (*Jencks v. United States* (1957), 353 U.S. 657, 667-69, 1 L. Ed. 2d 1103, 1111-13, 77 S. Ct. 1007, 1012-14.) When the State resists disclosure, asserting that the statement or a portion thereof is irrelevant, or contains privileged material, or is not substantially verbatim, the court must examine the statement *in camera* and determine whether it is or is not properly producible; if necessary excise irrelevant or privileged matter; and turn over to the defendant whatever portion of the statement can fairly be said to be the witness' own words." 94 Ill. 2d 327, 345.

■ The prosecutor's notes in this case were claimed to be not substantially verbatim. The trial court refused to inspect them. The State would have us uphold the trial court on the basis of a recent decision of this court in *People v. Allen* (1984), 121 Ill. App. 3d 1077, 460 N.E.2d 774. However, we decline to do so, as *Allen* is distinguishable from the case at bar.

In *Allen*, defense counsel requested the trial court to examine *all* notes produced by the State's Attorney and investigating police officers. This court held that the trial court acted properly in declining to

examine the notes without a showing of pertinence to a witness' testimony. In the instant action, both sides admitted that the notes existed. They were derived from interviews by the prosecutors with the witnesses.

The State further asks us to distinguish *Szabo*, as it is claimed defendant did not make the required preliminary showing of pertinence. We cannot imagine any clearer compliance with *Szabo* and find the State's suggestion bordering on the outlandish. *Szabo* required the request of a particular statement and a showing of pertinence to the trial testimony. Here, defense counsel asked for statements that came from preparation interviews of the witnesses. The statements existed. That fully meets the requirements in *Szabo*. The State also asks us to determine that, given the witnesses' testimony, any portion of the statement would not be useful to the defense. This too flies in the face of *Szabo*. "[O]nly the defense should be permitted to make that determination. [Citation.]" *People v. Szabo* (1984), 94 Ill. 2d 327, 345.

We find that the trial court erred in refusing to inspect the prosecutor's notes *in camera*. Under *Szabo*, we must reverse the conviction, vacate the sentence, and remand for a determination by the trial court of whether the prosecutor's notes contain "whatever *** can be fairly said to be the witness' own words." *People v. Szabo* (1984), 94 Ill. 2d 327, 345.

Should the trial court find that the statements do contain the witness' words, it shall order a new trial. However, if not, the court shall reinstate the conviction and sentence imposed.

Due to the fact that the conviction and sentence may be reimposed, we find it is necessary to discuss defendant's other contentions brought on this appeal.

Defendant next contends that the evidence was insufficient to convict him. It is uncontroverted that Brian Jackson was killed at Stateville by the Vice Lords. The jury had to determine who did it. The State presented witnesses who stated that it was the codefendants. Defendant himself only said that he did not do it.

Defendant claims that the evidence given by the occurrence witnesses is inherently incredible. He cites many factors and cases that concern the credibility of a witness. All three witnesses were accomplices. (*People v. Seymour* (1977), 53 Ill. App. 3d 367, 368 N.E.2d 1018.) Further, Joe Williams is an admitted heroin addict. (*People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201.) Finally, all three are felons. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) These points were well argued to the jury.

Defendant also points to other factors that were shown to the

jury. All occurrence witnesses, including defendant, made statements to investigators after the incident that were inconsistent with their trial testimony. Joe Williams claimed to be present, while Bruce Dawkins stated that he was not. (We note that defendant placed Joe Williams on the scene.) Also, there was a conflict as to how the weapons were brought into the shower room. Finally, defendant stated that certain other inconsistencies indicate that the three State's witnesses conspired in the murder and trial testimony in order to overthrow Young's control of the gang in prison.

█ It is the jury's responsibility to resolve contradictory evidence and factual disputes and to weigh the credibility of witnesses (*People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247; *cert. denied* (1984), 464 U.S. 865, 78 L. Ed. 2d 174, 104 S. Ct. 199), and on appeal, the jury's determination will not be disturbed unless it is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Evans* (1984), 122 Ill. App. 3d 733, 461 N.E.2d 634.

█ The testimony of an accomplice is sufficient to sustain a conviction. (*People v. Evans* (1984), 122 Ill. App. 3d 733, 461 N.E.2d 634.) A narcotics addict's testimony, while suspect, does not have to be disbelieved, especially when it is corroborated. The jury is to resolve any conflicts between the addict's testimony and the testimony of others. *People v. Smith* (1968), 41 Ill. 2d 158, 242 N.E.2d 198.

█ Our review of the record shows that defense counsel properly raised all the above issues. Those points were extensively argued before the jury. The jury was also properly instructed on credibility. While discrepancies existed in the evidence, the evidence as to the essential elements was such that this court does not believe the jury erred. Nor does the evidence raise a doubt in our minds. *People v. Evans* (1984), 122 Ill. App. 3d 733, 461 N.E.2d 634; *People v. Green* (1984), 125 Ill. App. 3d 734, 466 N.E.2d 630.

Defendant's third issue is whether the State improperly bolstered the testimony of Paul Williams. As mentioned earlier, Paul Williams made several statements to the investigators at Stateville. On cross-examination, defense counsel attempted to compare the timing of the statement that implicated defendant and codefendant with the timing of the State's reducing the charges. The State then introduced, through a Stateville investigator, Paul Williams' statement made a few days after the incident, well before the agreement with the State was struck.

█ The law in this State is well settled. "[T]he general rule [is] that a witness may not testify as to statements made out of court for the purpose of corroborating his testimony given at trial relative to

the same subject. [Citations.] However, to rebut a charge or inference that the witness *** testimony is of recent fabrication, evidence is admissible that he told the same story before *** the time of the alleged fabrication. [Citations.]" *People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363.

The exception also applies when an accomplice is alleged or inferred to have created his story in exchange for more lenient treatment by the prosecutors. *People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409; *People v. Blackwell* (1979), 76 Ill. App. 3d 371, 394 N.E.2d 1329.

As defendant correctly notes, testimony of an accomplice is suspect. (See *People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291.) However, the jury should be allowed to hear an attempt to rebut the inference of recent fabrication (*People v. Klinkhammer* (1982), 105 Ill. App. 3d 747, 434 N.E.2d 835), as the credibility of Paul Williams had a great bearing on the case. The trial judge properly limited the evidence to show that Williams' first statement that incriminated defendant was made over a year prior to trial. For this reason, no error occurred.

Defendant next complains of the actions of the prosecutor during cross-examination of Joe Williams. Defendant contends that the comments made in objecting to a question amounted to prejudicial error. Defendant feels the "clear implication" of the prosecutor's statement was that the State possessed highly relevant evidence as to the guilt of both the defendant and the witness.

The statement, coming after a question as to why Joe Williams was never charged with murder, was:

> "I am going to object to that, your Honor, unless he wants to open up the area of exactly why Mr. Williams was not charged."

The jury was then taken out, and a sidebar was held.

Defense counsel felt that, due to the statement, the State was keeping information regarding a possible agreement between the State and the witness. The assistant State's Attorney stated that he was objecting because the State's Attorney had made the decision to not charge Williams. Because Joe Williams did not actively participate in the murder, the office decided not to prosecute. Therefore, the argument continued, the issue of why Williams was not charged was due to the exercise of discretion on the part of the State's Attorney, not any deal with Joe Williams.

It is clear that the decision to initiate a criminal proceeding or to choose which of several charges may be brought are functions within

the exclusive discretion of the State's Attorney. (*People v. Pankey* (1983), 94 Ill. 2d 12, 445 N.E.2d 284.) This was the basis for the phrasing of the objection by the assistant.

 It is also clear that prosecutors should not make improper comments. Reversible error occurs when the statements prejudice the defendant's case. (See *People v. Provo* (1951), 409 Ill. 63, 97 N.E.2d 802.) In analyzing whether prejudice obtained, the trial judge's observations, while not dispositive, are helpful. He did not feel that the comment alluded to the withholding of evidence or an agreement. He was satisfied with the prosecutor's explanation. Our examination of the record also leads us to believe that no prejudice occurred. The cases cited by defendant are distinguishable in the fact that they concern repeated or numerous improper comments. In the case at bar, there was one comment. It was not prejudicial. Therefore, no reversible error occurred.

Defendant also complains of a comment during rebuttal ·closing argument. However, the State's claim of waiver is valid. There was no objection, nor could it be considered plain error. It is therefore, waived.

Defendant, in his next issue, states that he was denied his constitutional right to a trial by a jury drawn from a cross-section of the community. This was allegedly caused by the prosecutor's use of peremptory challenges.

 It is well settled that the use of peremptory challenges in particular cases to exclude members of groups does not amount to a violation of equal protection. A systematic exclusion of such persons in case after case should be shown. *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824; *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.

Defendant suggests we reject the authority in the above cases and create new law. We elect not to do so. On the basis of the above cases and their progeny, we reject defendant's claim due to his failure to show systematic exclusion.

Defendant's final contention is that the trial court erred in sentencing when it considered, as an aggravating factor, the fact that defendant's conduct caused great bodily harm. Our supreme court has found error when a trial judge considers an inherent factor in a crime as an aggravating factor. The court found it reasonable to conclude that the legislature considered these implicit factors in establishing the penalties for the crime. *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906; *People v. Brownell* (1980), 79 Ill. 2d 508, 404 N.E.2d 181.

We note that there is a conflict between this district and the Fifth

District on this matter. In *People v. Andrews* (1982), 105 Ill. App. 3d 1109, 435 N.E.2d 706, the Fifth District found that the trial judge may consider the harm caused when sentencing for murder. That court also failed to consider *Conover* in making its decision. This court found error when the trial judge considered the great bodily harm caused in defendant's murdering the victim. (*People v. Knox* (1984), 121 Ill. App. 3d 579, 459 N.E.2d 1077.) However, that court, citing *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, found no reversible error when the sentence did not constitute an abuse of discretion.

■■ Having considered both *Andrews* and *Knox* in light of *Conover*, we hold that *Knox* was correctly decided, as it is improper for a trial judge to consider the amount of bodily harm caused when sentencing a defendant for murder. *Cf. People v. Bone* (1982), 103 Ill. App. 3d 1066, 432 N.E.2d 329 (permissible for trial judge to consider harm caused in sentencing for armed robbery in felony murder prosecution).

In murder, the killer causes the greatest of bodily harm. There can be no absence of bodily harm. However, the trial judge is not without power to punish the brutal killer. He can punish the offender by use of the extended term provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(2)) if the murder is exceptionally brutal or is indicative of wanton cruelty. It is here the legislature allows the sentencing judge to consider the severity of the murder in sentencing the defendant.

■■ ■ We, therefore, turn to whether we should remand this case for resentencing due to the consideration of great bodily harm as an aggravating factor. Sentencing is within the discretion of the trial court; a sentence will not be disturbed absent an abuse of discretion. (*People v. Knox* (1984), 121 Ill. App. 3d 579, 459 N.E.2d 1077.) Defendant was eligible for the death sentence. He waived his right to have a jury determine if he should receive that sentence. The trial judge, hearing the evidence in aggravation and mitigation, found some factor that precluded the sentence for death. Defendant was still eligible for the sentence of natural life without the possibility of parole or, as we find this to be a heinous murder, an extended term. Barring any improper factor, any of the above sentences would have been appropriate. Defendant received a sentence of 35 years, well within the nonextended term of 20 to 40 years for murder. Therefore, while the court considered an improper factor, its sentence was not so skewed by it that the defendant was prejudiced. The sentence was not an abuse of discretion.

For the reasons stated above, the judgment of the circuit court of Will County will be reversed, the sentence will be vacated, and the cause remanded for the trial court to conduct an *in camera* inspection of the prosecutor's notes. The court shall then proceed consistently with the view set forth herein.

Reversed and remanded with directions.

STOUDER and BARRY, JJ., concur.