UNITED STATES, Appellee,

v.

Karim Abdul MUSTAFA (a/k/a Joseph
N. Brown, Jr.), Specialist Four, U.S.
Army, Appellant.

No. 51480.
CM 443380.

U.S. Court of Military Appeals.

June 2, 1986.

For Appellant: *Captain Lorraine Lee* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Major Lawrence F. Klar* (on brief); *Colonel Brooks B. LaGrua, Lieutenant Colonel Paul J. Luedtke, Captain Frank J. DiGiammarino, Captain Robert W. Wiechering.*

For Appellee: *Captain Robert L. Swann* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Patrick M. Flachs.*

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted by general court-martial with members of premeditated murder, felony murder, rape, forcible sodomy, assault with a means likely to produce grievous bodily harm, and unlawful entry, in violation of Articles 118, 120, 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C §§ 918, 920, 925, 928, and 934, respectively. The members sentenced appellant to be put to death, and the convening authority approved the sentence. The Court of Military Review set aside the findings of guilty to felony murder as being unreasonably multiplicious with premeditated murder, rape, and forcible sodomy, and ordered that Charge and specification dismissed. In light of our opinion in *United States v. Matthews*, 16 M.J. 354 (C.M.A.1983), wherein we held that the capital-punishment sentencing procedures in effect at the time of Matthews' trial were unconstitutional, the court below approved a sentence of dishonorable discharge, total forfeitures, and confinement for life.

We granted appellant's petition for review and ordered briefs on the following modified issue:

IF EXPERT TESTIMONY IS PROPERLY ADMISSIBLE AS TO FLIGHT PATTERNS OF BLOOD AND THEIR IMPLICATIONS, DID THE MILITARY JUDGE CORRECTLY RULE THAT GOVERNMENT WITNESS HERNDON WAS QUALIFIED UNDER MIL.R. EVID. 702 TO TESTIFY AS AN EXPERT ON THE SUBJECT; AND IF NOT WAS THE ADMISSION OF HERNDON'S TESTIMONY PREJUDICIAL TO ACCUSED? [1]

We also specified the following issue:

WHETHER UNDER MIL.R.EVID. 702, EXPERT TESTIMONY IS ADMISSIBLE AS TO FLIGHT PATTERNS OF BLOOD AND THEIR IMPLICATIONS.

On the morning of February 13, 1982, a civilian employee of the United States Army found the nude body of a female at the base of a stairwell in the housing area at Aschaffenburg, Germany. There were numerous stab wounds to the body and considerable forensic evidence of sexual assault. Appellant and another soldier were convicted of raping, sodomizing, and murdering the victim, a German national. The conviction of appellant's co-actor, Private Roy Gore, has been affirmed by this Court. *United States v. Gore*, 20 M.J. 310 (1985).

Special Agent James Herndon of the Army Criminal Investigation Command (CID) was called as an expert witness in blood-flight analysis to enhance the Government's theory of how the crime occurred. Herndon had attended a seminar on the subject, a 5-day course taught by the preeminent practitioner in the field, Professor Herbert L. MacDonell. This course exposed the students to lectures, written materials, including learned treatises, and experiments. At the conclusion an examination, which Herndon passed, was given to all who attended. Herndon also had an unspecified amount of other training, including CID schooling, and practical experience as an investigator.

1. In his petition for grant of review appellant stated the issue as follows:

WHETHER IT WAS ERROR TO ALLOW THE TESTIMONY OF AN UNQUALIFIED EXPERT WHOSE THEORY OF THE CASE WAS ADOPTED BY THE PROSECUTION AND WHOSE TESTIMONY HAD SUBSTANTIAL PREJUDICIAL IMPACT.

As originally framed by appellant, the issue could only be answered one way. We have restated the issue to allow for deliberation of the facts.

Herndon was neither a doctor nor a chemist. He had written nothing on blood flight paths or spatters. He testified that he had applied his training in only one other case, which resulted in the recantation of a claim of robbery.

Over defense objection the military judge declared Herndon to be an expert in the field of blood-flight characteristics. Herndon then described the dried bloodstains found at and near the crime scene. He described the stains using such terms as "impact," "cast-off," "medium velocity," and "transfer."

The uncontroverted evidence showed that there were blood stains from the victim in three places at or near the crime scene and that she had been stabbed thirteen times in the back, head, neck, and arms. Blood stains were located on a nearby street. A trail of blood drops led from there to the stairwell where massive amounts of blood were found.

Relying on analysis of the trail of blood and its patterns, Herndon testified that it was his opinion that the victim was accosted on the street and wounded at that point. She was taken to the stairwell where the bloodstains indicated that a further struggle occurred. He opined that she had been stabbed again while at or near the top of the staircase, then dragged to the basement of the stairwell, where additional wounds were inflicted. In essence, the Government adopted this scenario as its theory of the case.[2]

On the foregoing evidence, we hold that the military judge properly determined Herndon to be an expert and correctly allowed him to express his opinions based on that expertise.

Prior to the development of the Federal Rules of Evidence, a party to a federal trial who offered evidence of a scientific nature was required to show that it was "sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923). This test had its origin in *Frye* and generated considerable litigation as to whether a given field of endeavor was generally accepted. In addition, those parties who called experts were required to show that the potential witnesses were persons of particular training in some field not readily understandable by lay persons. In military courts, the same rules prevailed. Para. 138e, Manual for Courts-Martial, United States, 1969 (Revised edition).

Appellant argues that Herndon's area of expertise does not meet the standard of *Frye v. United States, supra,* or even the more liberal standard enunciated in *United States v. Williams*, 583 F.2d 1194 (2d Cir. 1978), *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979), and that the testimony should have been excluded.[3] He also contends that, even if the subject matter were admissible, Herndon was not qualified to offer his opinions as an expert in the case.

Mil.R.Evid. 702, Manual, *supra* (Change 5), and its progenitor, Federal Rule of Evidence 702, provide that any person whose testimony can "assist the trier of fact to understand the evidence or to determine a fact in issue" may testify as an expert. *See* Mil.R.Evid. 703; Fed.R. Evid. 703. This is a much lower threshold for determining whether a given person is an expert and requires only that the proffered witness have some specialized knowl-

---

2. In a statement to investigators appellant admitted having had consensual sex with the victim, but ascribed the stabbing to his co-actor. He contended that the injury was an accident and occurred when he pushed Gore into the victim.

3. The wording of Mil.R.Evid. 702 is considerably broader than the test required by *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). It has led some commentators to conclude that the

rationale therein has not survived the promulgation of the rules. J. Weinstein & M. Berger, *Evidence,* para. 702[03] (1982); *see also United States v. Williams,* 583 F.2d 1194 (2d Cir.1978), *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979); *State v. Hall,* 297 N.W.2d 80 (Iowa 1980); *but see United States v. Brady,* 595 F.2d 359 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979).

edge as a result of experience or education. No longer are parties to litigation "limited to [the use of] experts in the strictest sense of the word." *Soo Line R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1377 (8th Cir. 1977). *See Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171 (5th Cir.1981), *aff'd on reconsideration*, 645 F.2d 511 (5th Cir.1981). The witness need not be "an outstanding practitioner," but only someone who can help the jury. *United States v. Barker*, 553 F.2d 1013, 1024 (6th Cir.1977). The questions thus posed to the military judge were whether the subject of Herndon's proffered testimony would be of assistance to the members and whether Herndon could competently provide such evidence.

■ The field of blood-flight analysis had its genesis in a monograph published by Professor Herbert MacDonell under a grant from the Law Enforcement Assistance Administration.[4] While there has been some criticism of this field, at least five state courts have admitted such testimony.[5] The analysis itself is grounded in established laws of physics and common sense. It is certainly capable of quantification and, therefore, we conclude that there is a body of specialized knowledge which would permit a properly trained person to draw conclusions as to the source of the blood.

To be admitted, expert testimony need only be helpful, i.e., relevant. This is a matter within the discretion of the military judge. *See* Mil.R.Evid. 401 and 402. Examining the testimony of Special Agent

Herndon, we believe that the military judge could determine that such evidence would "assist the trier of fact ... to determine a fact in issue." *See United States v. Snipes*, 18 M.J. 172, 178 (C.M.A.1984); *see also United States v. Vik*, 655 F.2d 878 (8th Cir.1981). Consequently, he did not err in determining that the subject matter was admissible under Mil.R.Evid. 702.

■■ The second question is whether Herndon could testify about the blood stains he examined. Again this is within the discretion of the military judge. Herndon was not Professor MacDonell, but he did have professional training and some experience, all of which could be of help to the court members in this case. *United States v. Barker, supra.* As a result, we conclude that the military judge did not abuse his discretion in allowing Herndon to testify both as to the blood spatters and his theory of the crime.[6]

In addition to the issues already addressed, we agreed to consider the following issue upon the petition briefs:

WHETHER THE DENIAL OF THE APPELLANT'S REQUEST FOR AN EXAMINATION BY A FORENSIC PSYCHIATRIST OR FORENSIC PSYCHOLOGIST WAS ERROR WHICH SUBSTANTIALLY PREJUDICED HIS DEFENSE.

■■ There can be no question that a military accused is entitled to have equal opportunity with the Government to obtain witnesses to assist him in his defense. Art. 46, UCMJ, 10 U.S.C. § 846. It follows,

---

4. MacDonell, *Flight Characteristics and Stain Patterns of Human Blood* (Nov. 1971).

5. Some of the State courts that have admitted testimony regarding the field of blood-flight analysis are: *People v. Knox*, 459 N.E.2d 1077 (Ill.App.1984); *Farris v. State*, 670 P.2d 995 (Okla.Crim.App.1983); *State v. Melson*, 638 S.W.2d 342 (Tenn.1982); *State v. Graham*, 422 So.2d 123 (La.1982); and *State v. Hall, supra.* A fifth State court, the Supreme Judicial Court of Maine, has not rejected the evidence outright, but has reversed a conviction where the trial judge admitted the evidence saying that he should have inquired more deeply into the field and the qualifications of the particular witness. *State v. Philbrick*, 436 A.2d 844 (Me.1981). Pri-

or to *People v. Knox, supra*, another Illinois appellate court had rejected the testimony of Professor MacDonell when proffered by the defendant in a criminal prosecution: *People v. Driver*, 379 N.E.2d 840 (Ill.App.1978).

6. Given the broad language of Mil.R.Evid. 702, we have no doubt that Sherlock Holmes could be eminently qualified as an expert in this field. According to himself, "It is simplicity itself, ... so absurdly simple that an explanation is superfluous; and yet it may serve to define the limits of observation and of deduction.... So much is observation. The rest is deduction." "The Sign of Four," A. Doyle, *The Complete Sherlock Holmes* 91 (Doubleday & Company, Inc., 1930).

therefore, that an accused is entitled to have access to a qualified psychiatrist or psychologist for the purposes of presenting an insanity defense. Due process of law requires, as a minimum, "that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial," the accused must have "access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 1097, 84 L.Ed.2d 53 (1985) (within the military, indigency is not of decisional importance; each accused is entitled to the same treatment without regard to his financial status).

Paragraph 121, Manual, *supra* (R.C.M. 706, Manual for Courts-Martial, United States, 1984), provides for a board of medical officers, who shall at the request of either the trial counsel, defense counsel, investigating officer, or the commanding officer considering the disposition of the charges, conduct an inquiry into the mental status of the accused. The clear import of paragraph 121 is that the accused shall have access to a board of officers who will make the requisite psychiatric evaluation. Such an evaluation of this appellant was conducted by a board of three certified psychiatrists.

At trial, appellant made a motion for the military judge to order an additional examination by either a board of officers, which included a forensic psychiatrist, or an evaluation by a single psychiatrist who was certified not only as a psychiatrist but also as a forensic psychiatrist. As a third alternative, appellant requested the services of a civilian forensic psychologist. The military judge denied the motion, holding "that the accused has no right to determine the composition of a psychiatric board" and

that "there has been no showing of inadequacy of the evaluation."

We have carefully reviewed the record of trial and conclude that the military judge ruled correctly. There is no showing in the record that the sanity of appellant at the time of the offense was a significant factor at trial or that appellant was denied access to competent psychiatrists for the purpose of presenting an insanity defense. The only effect of the military judge's ruling was to overrule appellant's request for the services of a particular psychiatrist.

The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring):

I have expressed elsewhere my concern that purported "experts" may be allowed to express opinions for which there is no scientific basis. *See United States v. Snipes*, 18 M.J. 172, 180 (C.M.A.1984) (Everett, C.J., concurring in the result); *United States v. Moore*, 15 M.J. 354, 367 (C.M.A.1983) (Everett, C.J., dissenting). However, whether I apply the *Frye* * test or some more liberal test, my examination of this record convinces me that the military judge acted within his discretion in allowing the blood-spatter testimony of Special Agent Herndon. As the principal opinion points out, there is ample precedent for receiving such evidence, which has an obvious basis in recognized laws of physics.

In a summation question, trial counsel virtually invited Herndon to go beyond the proper scope of his expertise. The prosecutor asked: "Analyzing all the evidence you have discussed here this morning, what is your *theory* as to how this incident occurred?" (Emphasis added). In my view, "theories" should be the subject of argument by counsel; and experts should only state their opinions and conclusions and testify whether the evidence is consistent with various hypotheses. However, because there was no objection to the form of this question and no motion to strike the answer, appellant has waived any complaint he might otherwise have. Accordingly, I concur.

---

* *Frye v. United States,* 293 Fed. 1013 (D.C.Cir. 1923).