Titone, J.
(dissenting in part). The majority holds that Nassau County is entitled to restitution as a "victim” within the meaning of Penal Law § 60.27 for its payment of sick leave and medical bills on behalf of an off-duty police officer who was injured when he attempted to intercede in defendant’s burglary. Because, in our view, statutory interpretation, legislative intent and public policy concerns preclude reimbursing a municipal law enforcement agency for the foreseeable operating and personnel costs associated with the very crime-fighting function it is mandated to perform, we respectfully dissent from that portion of the majority’s holding which affirms the restitution award to Nassau County.
Initially, we conclude that the salary paid to the police officer for sick leave taken as a result of the injuries sustained while apprehending the defendant does not constitute compensable "loss or damage” within the meaning of Penal Law § 60.27. As it was written at the time of the burglary, that section permitted the sentencing court to require defendant "to make restitution of the fruits of his [or her] offense or reparation for the loss or damage caused thereby.” (§ 60.27 *999 [former (1)].) Thus, what is commonly referred to as "restitution” is actually comprised of two components: disgorgement of the criminal fruits (restitution) and compensation for damages (reparation).
Reparation, defined as "loss or damage caused” by the offense, has, by its terms, almost limitless capacity, and conceivably could include compensation for mental anguish suffered by a crime victim. However, the Legislature subsequently amended the statute to make clear that the compensable "loss or damage” caused by defendant should be circumscribed (L 1992, ch 618, § 12). As it now reads, Penal Law § 60.27 (1) authorizes "restitution of the fruits of [defendant’s] offense or reparation for the actual out-of-pocket loss caused thereby” (emphasis supplied).
In this case, which involves reparation, the Nassau County Police Department did not make any additional "sick leave” payments to the detective. Rather, it simply paid his salary as required by General Municipal Law § 207-c (1). While the County did lose two days of the detective’s services, that loss of time is not the type of loss contemplated by section 60.27. Indeed, if it were, then any employer who pays its workers for time expended in consequence of a crime — while testifying at trial, for example — could make a claim for reparation. Manifestly, the Legislature did not intend that result.
Additionally, the restitution award in this case does not meet the requirement of the applicable version of Penal Law § 60.27 (1) that restitution be made "to the victim of the crime.” In People v Rowe (75 NY2d 948), we held that a law enforcement agency did not qualify as a "victim” within the meaning of this statute, and thus could not recover "buy and bust” money expended in the undercover purchase of drugs. In reaching this conclusion, we adopted the Appellate Division’s reasoning that " '[wjhere public monies are expended in the pursuit of solving crimes, the expenditure is part of the investigating agency’s normal operating costs. The governmental entity conducting an investigation is not therefore considered a "victim” to the extent that public monies are so expended’ ” (152 AD2d 907, 908, quoting People v Evans, 122 Ill App 3d 733, 740, 461 NE2d 634, 639). That analysis is equally applicable here.
That the principles enunciated in Rowe are in accord with the Legislature’s view is evidenced by a 1991 amendment to section 60.27, which was enacted in response to Rowe and *1000 grants law enforcement agencies "victim” status solely for the purpose of recovering drug buy money retained by a defendant (L 1991, ch 545, § 1). In enacting the new provision, the bill’s Senatorial sponsor commented: "the amendment does not reward law enforcement agencies for apprehension of criminals, nor does it seek to have them reimbursed for ordinary and necessary expenses incurred by them in their investigations; * * * rather, it seeks to prevent convicted narcotics offenders from reaping a windfall” (Mem of Senate Sponsor in Support of S 3072A [1991], 1991 NY Legis Ann, at 299, 300). To make clear that reimbursement for the ordinary and incidental costs of law enforcement was not intended, the Legislature adopted a narrowly circumscribed set of criteria that must be met before such agency will be entitled to qualify for restitution under the amended statute.*
In view of the analysis in Rowe (supra), as well as the Legislature’s apparent adoption of the underlying principles, we cannot endorse the Appellate Division’s holding, affirmed by the majority today, that Nassau County is entitled to restitution because it suffered its loss "not as a result of operational law enforcement activities but rather in its role as employer” (People v Cruz, 184 AD2d 521, 521-522, citing People v Hall-Wilson, 69 NY2d 154). This arbitrary distinction between a law enforcement agency’s administrative and employment functions suffers from two fatal flaws.
First, the costs of providing sick leave and medical benefits to personnel employed in a labor intensive field such as law enforcement are an inextricable part of the normal and foreseeable operating costs associated with that governmental function. As is established by Rowe, such operating costs, which are funded by the taxpayer to enable the municipality *1001 to provide an essential service, are not at all comparable to a private employer’s out-of-pocket payments to or on behalf of an injured employee. Indeed, it is the unique role of this municipal "victim” that differentiates it from the victim in People v Hall-Wilson (69 NY2d 154, supra) and renders that case, which was relied upon by the majority for its analysis here, so irrelevant. While municipal law enforcement agencies are entrusted with the crime-fighting function for which they are governmentally funded, private employers as in Hall-Wilson have no such responsibilities and, accordingly, are not duty bound to budget for or anticipate losses associated with crime. An award of restitution to recompense such other entities for expenses unexpectedly thrust upon them by a criminal incident is clearly justified. That justification is removed, however, when the very agency entrusted with the apprehension of criminals is enabled to shift the costs associated with the primary societal function it has undertaken to perform.
Similarly, the majority’s suggestion that, unlike the cost of furnishing "buy money,” the cost of providing benefits to injured police officers should be compensated through restitution because they are not voluntarily incurred cannot be maintained. The distinction between "voluntarily” and "involuntarily” incurred expenses has little meaning in the context of municipal services such as law enforcement, since the provision of such services is, in some senses, always voluntary while, in other senses, it is always mandatory. It is always voluntary in the sense that the municipality always retains the right to allocate its resources in any manner it deems appropriate, and, provided that it has the support of voters and taxpayers, the municipality remains free to reduce or expand its law enforcement services in accordance with its own policy choices. On the other hand, the provision of law enforcement services can also be said to be mandatory in all cases, because, as a practical matter, an existing police department, whose mission is to uphold and enforce the law, cannot abrogate its responsibility suddenly by deciding not to apprehend criminals.
The artificiality of the distinction on which the majority relies is highlighted by the problems that result from its application. Under the majority’s approach, such expenses as the cost of a police officer’s salary while that officer is waiting to testify in connection with an arrest, the cost of repairing a police vehicle damaged during a chase and even the cost of *1002 conducting an investigative lineup to aid in apprehending a suspect could be deemed "involuntary,” since they each "stem from legal obligations that are directly and causally related to the crime” (majority opn, at 998).
Instead of relying on such artificial distinctions, we would base our analysis on the fact that the core mission of law enforcement — fighting crime — necessarily entails specific hazards and costs, including the costs associated with injuries that law enforcement personnel may sustain in the line of duty during the apprehension of criminals. Absent specific statutory authorization, a municipality can no more recover those costs from the criminal defendant than it can recover any of the other costs associated with the operation of local government and the provision of services to citizens. Accordingly, in light of the aforementioned statutory interpretation, legislative intent and public policy concerns, we would vacate the entire restitution award to Nassau County.
Judges Simons, Hancock, Jr., Bellacosa and Smith concur; Judge Titone dissents in part in an opinion in which Chief Judge Kaye concurs.
Order affirmed in a memorandum.

 The 1991 amendment, codified at Penal Law § 60.27 (9), provides that "the term 'victim’ as used in this section, in addition to its ordinary meaning, shall mean any law enforcement agency of the state of New York or of any subdivision thereof which has expended funds in the purchase of any controlled substance from [a defendant] or his agent as part of the investigation leading to such conviction” (emphasis added). Notably, if the preamendment definition of "victim” already encompassed law enforcement agencies, the italicized language above would be rendered superfluous. The provision also places the following restrictions on the agency’s ability to recover in restitution: (1) the defendant must be convicted of a class A, B, C or D felony involving the sale of a controlled substance; (2) no other victim who is a "person” seeks restitution; and (3) the amount of restitution must be limited to the actual amount of the purchase less any other amounts recovered.